PENNWALT CORPORATION,
Appellant,

v.

CENTER LABORATORIES,
INC., Appellee.

Patent Appeal No. 75–559.

United States Court of Customs
and Patent Appeals.

Nov. 6, 1975.

Charles E. Feeny, Philadelphia, Pa., attorney of record, for appellant.

R. Steven Pinkstaff, Fitch, Even, Tabin & Luedeka, Chicago, Ill., attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from a decision of the Trademark Trial and Appeal Board[1] (hereinafter TTAB) dismissing appellant's opposition to appellee's application to register the mark ALLERSET for an "allergenic extract prescription set used for injection for hyposensitization therapy in the field of allergy." Appellant asserts that appellee's mark so resembles appellant's mark ALLEREST for "medication for relief of sinus passage congestion, allergies and hay fever" as to be likely to cause confusion, mistake, or deception. We reverse.

No dispute arises over appellant being the first user.

The record indicates that appellant sells both over-the-counter and so-called "ethically promoted" drugs. The over-the-counter drugs are sold through Pharmacraft Consumer Products. One of these over-the-counter drugs bears the mark ALLEREST. These ALLEREST drugs are available in tablet and capsule form as well as in the form of a nose spray. All forms of the drug contain a decongestant and antihistamine, and are said to be used for the symptomatic relief of minor eye irritation due to allergies, such as hay fever.

Appellant's ALLEREST products have been widely advertised. Appellant has expended in excess $19,300,000 during the period 1965 through 1972 in the advertising and promotion of its ALLEREST products. Sales of these products from 1965 through 1972 approximated $40,000,000.

Appellant also sells a line of ethical drugs through Pennwalt Prescription Products. These drugs are sold to wholesalers who in turn sell them to retailers and drugstores. About five percent of this group's sales are directly to hospital pharmacies and to dispensing physicians. Appellant sells prescription cough medicines (under the marks TUSSIONEX and OMNI–TUSS) and injectables (under the marks NESACAINE and NESACAINE–CE) which are used for anesthesias.

Appellee sells allergenic extracts to physicians in general practice, allergists and clinics. These allergenic extracts are supplied in the form of an ALLERSET treatment set. The set comprises four multiple-dose vials in serial dilution, ready for injection. The vials contain the antigen to which the specific patient is sensitive.

The physician determines the particular formulation that is used to prepare an ALLERSET treatment set. The appellee thus provides a minimum of five hundred to six hundred different formulations of allergens, individually and/or in combination. Appellee also provides stock sets for immediate delivery. Ninety percent of the ALLERSET treatment sets are shipped directly to the physician upon his order, with the remainder being shipped to patients upon the prescription of physicians.

1. 184 USPQ 501 (TTAB 1974).

## Opinion

The sole issue to be resolved in this appeal is whether appellee's mark so resembles appellant's mark as to be likely, when applied to the goods of appellee, to cause confusion or mistake or to deceive. We are convinced that this issue must be resolved in the affirmative and that the decision of the TTAB must be reversed.

As we view this case, the primary contention of appellee, which led the board to the conclusion that there would be no likelihood of confusion, is that opposer's goods do not move in the same channels of trade as do the goods to which applicant's mark is affixed. The board noted:

> [I]t is unlikely that applicant's products sold under the mark "ALLERSET" will be available in drugstores or pharmacies for sale to the general public upon an over-the-counter or even a prescription basis.

In testing for likelihood of confusion under section 2(d) of the Lanham Act, the similarity or dissimilarity of established, likely-to-continue trade channels under which, and buyers to whom, sales are made, must be considered. See *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). This evidentiary element may even play a dominant role in appropriate cases. We do not feel, however, that this is such a case. Notwithstanding that appellee's goods are sold directly for the most part to physicians and that the goods covered by appellant's mark are sold over the counter in drug stores to the consumer, both parties' products are *allergy medicines* even though they differ in the manner in which they treat allergies.

Appellant's and appellee's respective marks are, in addition, very similar, when considered in their entireties, in appearance, sound, and commercial impression. We also note that appellant's mark is a well-known mark in the field of allergy treatment medicines based upon extensive use and advertising.

We must agree with appellant that appellee should not be permitted to register a mark that is nearly identical[2] to appellant's mark and use that mark in the same general field of allergy medicines to obtain the benefit of appellant's good will. See *Meyer Chemical Co. v. Anahist Co.,* 263 F.2d 344, 46 CCPA 784, 120 USPQ 483 (1959).

Furthermore, in determining likelihood of confusion, the goods described in appellee's application for registration must be compared with those enumerated in the registration of the opposer's previously registered mark. See *Paula Payne Products Co. v. Johnson Publishing Co.,* 473 F.2d 901, 177 USPQ 76 (CCPA 1973); *United States Steel Corp. v. Bijur Lubricating Corp.,* 286 F.2d 617, 48 CCPA 820, 128 USPQ 547 (1961); *General Shoe Corp. v. Lerner Bros. Mfg. Co.,* 254 F.2d 154, 45 CCPA 872, 117 USPQ 281 (1958); but see *Ultra-Violet Products, Inc. v. Purex Corp.,* 171 USPQ 827 (TTAB 1971). In this connection, we note that the goods described in opposer's registration are "medication for relief of sinus passage congestion, allergies and hay fever." In our opinion, this description includes not only over-the-counter non-prescription items such as those which appellant presently produces and sells, but also *prescription* medications for the relief of sinus passage congestion, allergies, and hay fever.

Finally, it is our view that, upon being exposed to appellant's extensive advertising of its product ALLEREST, there would be a strong likelihood that *consumers* might be misled into assuming that appellee's product emanates from the same source as appellant's product. Physicians, especially those who happen to be allergy sufferers, are also *consumers.* As such, they are exposed to the same mass media advertising as the rest of us, and are thus also likely to be misled regarding the source or origin of appellee's product. Although physicians may, as a group, be considered relatively

---

**2.** The only difference in the letter arrangement of the two marks involves the transposition of the letters "ES" in ALLEREST to "SE" in ALLERSET.

careful or sophisticated purchasers, we think this consideration is more than outweighed in importance by the need to avoid a likelihood of confusion where both products are used in the same general field, i. e., the treatment of allergies. See *Clifton v. Plough, Inc.,* 341 F.2d 934, 52 CCPA 1045, 144 USPQ 599 (1965).

For the foregoing reasons, the decision of the TTAB is *reversed.*

*Reversed.*

MILLER, Judge (dissenting), with whom RICH, Judge, joins.

I cannot agree that appellee's mark is "nearly identical" to appellant's mark. The marks are clearly not similar in sound and meaning. Both include the prefix "Aller," which the evidence shows to be a generic field-of-use indicator (for allergy), not unlike the generic "Termi" in the marks "Termicide" and "Terminix." *E. L. Bruce Co. v. American Termicide Co.,* 48 CCPA 762, 285 F.2d 462, 128 USPQ 341 (1960). Consequently, the dominant portion of each mark for the purpose of indicating origin is the suffix, and the suffixes differ significantly in sound and meaning. The suffix of opposer's mark connotes "rest" or "arrest" from allergy, while applicant's "set," which, in the description of applicant's goods, is a "prescription set," connotes an allergy treatment set—to the class primarily involved in the channel of trade, medical doctors, who purchase (or prescribe) and use the set to hyposensitize their patients against allergies. There is no evidence that medical doctors are likely to be confused over the source of appellee's products. Indeed, their professional training and experience would be likely to cause them to concentrate on the meaning of the respective marks, so that confusion would be unlikely. In those instances where the patient might be the purchaser, there is no likelihood of confusion since his purchase is limited to the prescription provided by his medical doctor.

I would hold that the use of applicant's mark on its goods would not be likely to cause confusion or mistake, or to deceive.