**BRODERICK & BASCOM ROPE COMPANY, Appellant,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Appellee.**

**Patent Appeal No. 76–501.**

United States Court of Customs and Patent Appeals.

April 8, 1976.

---

William G. Bruns, Gravely, Lieder & Woodruff, St. Louis, Mo., atty. of record, for appellant. John F. Smith, Shoemaker & Mattare, Arlington, Va., of counsel.

William E. Schuyler, Jr., Alan S. Cooper, Schuyler, Birch, Swindler, McKie & Beckett, Washington, D.C., attys. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (board), 186 USPQ 301 (1975), dismissing appellant's (Broderick's) opposition No. 53,629, filed October 30, 1972, against appellee's (Goodyear's) application serial No. 400,726, filed August 20, 1971, for registration of POWERSTEEL for tires, use since June 23, 1971 being alleged. We reverse.

Broderick relies on its long and extensive use of POWERSTEEL * in connection with wire cables and ropes, the purchase by heavy equipment operators of steel cable and tires, the fact that steel wire cord is used in tires, and the fact that the manufacture of steel wire cord used for tires is a natural area of expansion for Broderick as support for its argument that confusion, mistake or deception would be likely if registration is permitted.

---

* Registration No. 662,100 issued May 27, 1958, alleging use since March 1886.

Broderick's staff testified to distribution of tires and wire cable by the same distributors and to incorporation thereof in the products of original equipment manufacturers. Exhibits evidenced use of wire cable or rope and tires on mobile cranes, scrapers and the like.

The board found Broderick's prior use to be undisputed and the involved marks to be identical. It nonetheless held for Goodyear, stating:

> The fact that the products of the parties are both used in the construction industry is insufficient in and of itself to establish a relationship between them which would support opposer's claim of expandable rights. That is to say, opposer's wire cables and ropes and applicant's tires are distinctly different products which normally are sold through different channels of trade and purchased under different circumstances, conditions, and consumer impulses.

## OPINION

■ Goodyear's arguments rest upon consideration of its goods as passenger car tires sold to the general public. The description of goods in the opposed application, however, is "tires," and it is the description in the application that controls. *CTS Corp. v. Cronstroms Manufacturing, Inc.,* 515 F.2d 780, 185 USPQ 773 (Cust. & Pat.App. 1975); *General Shoe Corp. v. Lerner Bros. Mfg. Co.,* 254 F.2d 154, 45 CCPA 872, 117 USPQ 281 (1958). The description of goods in this case encompasses tires of the type sold to users of heavy equipment, i. e., to the purchasers of Broderick's wire goods, for use on the same vehicles on which Broderick's goods are used. That type tire is sold in stores along with the goods of Broderick by distributors of Broderick's goods. Hence it was error to consider Goodyear's tires, as described in the application, to be moving in channels of trade different from those in which Broderick's goods move.

■ Goodyear was aware of Broderick's mark prior to its adoption of the identical mark for tires. Though the board and Goodyear's brief before us both refer to Goodyear's sales of over $1,150,000 "during the period June, 1971, to the end of October, 1973," the record reflects sales by Goodyear of only $78 in 1971, no sales in 1972, sales of only $4,400 in the period January through June 20, 1973, and sales of over $1,146,000 in the three months of July, August, and September of 1973. It is axiomatic that doubts regarding likelihood of confusion should be resolved against the latecomer. *Crown Radio Corp. v. Soundscriber Corp.,* 506 F.2d 1392, 184 USPQ 221 (Cust. & Pat. App. 1974); *United Merchants & Manufacturers, Inc. v. R. A. Products, Inc.,* 404 F.2d 399, 56 CCPA 751, 159 USPQ 714 (1968). That axiom should apply even if a latecomer floods the marketplace after opposition has been filed.

■ Broderick's sole use of the mark POWERSTEEL for over 90 years prior to adoption of the mark by Goodyear, its sales during the years 1965 to 1972 of over $19,-000,000, and its advertising expenditure during the same period of over $891,000 indicate that the mark would be familiar to a substantial body of purchasers. We think the subsequent appearance of the identical mark on related goods sold in the same channels of trade would be likely to lead persons familiar with the mark to believe that the sources of the latecomer's goods and those of Broderick are in some manner related, i. e., that confusion, deception or mistake as to source is likely.

The decision of the Trademark Trial and Appeal Board is *reversed.*

*REVERSED.*

BALDWIN, J., dissents.