**OCTOCOM SYSTEMS, INC., Appellant,**

v.

**HOUSTON COMPUTER SERVICES, INC., Appellee.**

**No. 90–1196.**

United States Court of Appeals, Federal Circuit.

Nov. 2, 1990.

Brian M. Dingman, Law Offices of Joseph S. Iandiorio, Waltham, Mass., argued for appellant. With him on the brief was Joseph S. Iandiorio.

J. Paul Williamson, Arnold, White & Durkee, Arlington, Va., argued for appellee.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

NIES, Chief Judge.

Octocom Systems, Inc. (OSI), appeals from the final decision of the U.S. Patent and Trademark Office, Trademark Trial and Appeals Board, in Opposition No. 76345, refusing registration of OSI's alleged trademarks OCTOCOM alone and with a stylized "O" design for "modems," Serial Numbers 618,049 and 618,030, respectively. On a motion for summary judgment, the board held that OSI's marks so resemble the previously used and registered trademark OCTACOMM for computer programs of Houston Computer Services, Inc., as to be likely to cause confusion, mistake or deception and were, therefore, unregistrable under section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (1988). Our jurisdiction rests on 28 U.S.C. § 1295(a)(4)(B). We affirm and grant Houston's motion for sanctions for a frivolous appeal.

I

OSI filed applications on September 2, 1986, for registration of the marks OCTO-COM and O/OCTOCOM for "data communications equipment—namely, modems and computer programs for use in or in conjunction with modems, such programs being distributed in magnetic media and read-only memory and in other forms." Despite the presence on the register of Reg. No. 1,338,874 issued June 4, 1985, to Houston for the virtually identical mark OCTA-COMM for "computer programs recorded on magnetic tapes and discs and manuals therefor all sold as a unit," the examiner approved OSI's alleged marks for publication.[1] Houston timely opposed.

As grounds for opposition, Houston alleged that it produces and sells a variety of personal and professional computers to be connected in networks with a host computer; that it offers its computer programs under the mark OCTACOMM and has done so since long prior to use of OCTOCOM by OSI; that it is the owner of Reg. No. 1,338,874 issued June 4, 1985, covering such use of the OCTACOMM mark; and that OSI's marks OCTOCOM alone or with the design so resemble Houston's previously used and registered mark OCTACOMM as to be likely, when used in conjunction with applicant's goods, to cause confusion, to cause mistake or to deceive. OSI responded with a general denial. On April 27, 1988, Houston filed the motion for summary judgment which, after much legal maneuvering, was ultimately granted in August 1989. The decision was reaffirmed on a petition for reconsideration in October 1989.

As indicated, OSI originally sought registration of the OCTOCOM marks for modems and computer programs. OSI first filed a motion to amend its answer to add a counterclaim to cancel Houston's registration in part. OSI asserted the theory that Houston had "abandoned" its registration, which covered computer programs broadly, to the extent that the description therein encompassed types of computer programs which Houston had never sold under the mark. In effect, OSI sought to narrow the description of goods in Houston's registration to limited types of computer programs sold to a specific class of customers. In denying the motion, the board held, *inter alia*, that even if Houston's registration were to be restricted, Houston's goods would be encompassed within OSI's unrestricted description of its goods as "computer programs". It further opined that the relief sought was not supported by any precedent.

OSI then filed a motion to delete all reference to "computer programs" in its application. This motion to amend was granted. However, in accordance with board practice, OSI was required to agree to entry of a judgment against it that the marks OCTOCOM and OCTOCOM with the "O" design, when used for the broader identification (i.e., including computer programs), would be likely to cause confusion with Houston's mark OCTACOMM. *Houston Computer Servs. v. Octocom Sys.*, Opp. No. 76345, slip op. at 3 (TTAB Apr. 11, 1989). Thus, OSI's application came to be limited to registration of the mark OCTOCOM for "modems" only.

Having restricted its application to "modems", OSI again tried to add a counterclaim for partial cancellation of Houston's registration. The board again denied the motion. The board found, *inter alia*, that even though the direct overlap in the parties' goods had been eliminated, the likelihood-of-confusion issue without the restriction of Houston's goods would be essentially the same as with the proposed restriction. The board noted that Houston's programs are intended for use whenever there is need for communications between a host computer and other equipment such as a "modem" and that OSI's identification of its "modems" was unrestricted. Because allowing the amendment would serve no purpose, the board denied OSI's motion.

---

**1.** The application files have not been furnished and we do not know whether the Houston registration was cited during prosecution.

In this appeal, OSI does not challenge the denial of that motion.

Having finally disposed of preliminary skirmishes, the board turned to the merits of Houston's pending motion for summary judgment. Houston's motion was based on the marks and goods as set forth in the application and registration, respectively, as well as evidence that the goods of the parties were closely related, that the OCTACOMM mark was arbitrary, and that there was no other variation of the OCTACOMM mark for computer products known to Houston. In response to Houston's motion, OSI submitted a brief in opposition accompanied by an affidavit of its president, Ian R. Davison. Mr. Davison averred that he was not aware of any confusion as to the source of OSI's modems, and further averred: that not all data communications equipment requires software of the type offered for sale by Houston under the OCTACOMM mark; that Houston's software need not operate with modems; that OSI software controls the principal features of OSI's family of modems and modem controllers; and that Houston's software may not be used to perform this control function. The declaration also presented information directed toward differentiating OSI's channels of trade and advertising media from those for Houston's computer programs.

Upon consideration of the record, the board concluded that there was no genuine issue of material fact and that the use of OCTOCOM with or without the "O" design for modems would be likely to cause confusion with the prior use of OCTACOMM for computer programs. OSI challenges both of these rulings.[2]

## II

### A

### Alleged Factual Disputes

Rule 56 of the Federal Rules of Civil Procedure is made applicable to proceedings before the Trademark Trial and Appeal Board by 37 C.F.R. § 2.116(a) (1989).

Rule 56 provides in pertinent part:

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law....

. . . .

(e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Where a motion for summary judgment is made and supported in accordance with the above rule, it is incumbent on the non-movant in a summary judgment proceeding to proffer countering evidence sufficient to create a genuine factual dispute. A dispute is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant. *Sweats Fashions v. Pannill Knitting Co.*, 833 F.2d 1560, 1562, 4 USPQ2d 1793, 1795 (Fed.Cir.1987). The party opposing a motion for summary judgment must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant. The record must be viewed in a light most favorable to the party opposing the motion. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984).

As stated in *Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 835–36, 221 USPQ at 564:

---

**2.** No separate argument is made that the addition of the "O" design distinguishes OCTOCOM from OCTACOMM.

A critical factor in a motion for summary judgment ... is the determination by the court that there is no *genuine* issue of *material* fact.... The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant.

See also *Pure Gold, Inc. v. Syntex (U.S. A.), Inc.,* 739 F.2d 624, 222 USPQ 741 (Fed. Cir.1984) (trademark opposition).

■ OSI argues that the board erred in holding that the record created no genuine issue of material fact in view of the affidavit of its president, Ian R. Davison, which averred certain facts which, per OSI, must be considered in resolving the ultimate issue of likelihood of confusion under the precedent of *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973). OSI argues that the averments in Davison's affidavit "establish a genuine issue necessitating a trial on the merits." This argument is wholly without evidentiary foundation. OSI points to no conflicting evidence which would establish an underlying fact one way or the other depending on which party's evidence is believed. When pressed at oral argument, OSI's counsel could not identify a single factual issue in dispute. The ostensible "fact" disputes, argued over four pages of OSI's brief, amount to no more than OSI's disagreement with the board's ultimate conclusion on the likelihood-of-confusion issue, which in proceedings before the board is a conclusion of law. *Sweats Fashions,* 833 F.2d at 1565, 4 USPQ2d at 1797; *Kimberly–Clark Corp. v. H. Douglas Enter.,* 774 F.2d 1144, 1146, 227 USPQ 541, 542 (Fed.Cir.1985). OSI's argument of nonexistent issues placed a wholly unnecessary burden on its opponent and on the time of the court.

## B

### Alleged Per Se Rule

■ OSI next argues that the Trademark Trial and Appeal Board erred, as a matter of law, by applying a *per se* rule of likelihood of confusion between marks in the computer field.

OSI had petitioned the board for reconsideration of the board's decision on that ground. In rejecting the petition, the board pointed out that it had relied on the evidence clearly showing that modems are used in conjunction with Houston's computer programs. Thus, the broad description in OSI's application, *i.e.,* "modems", encompasses goods associated and used with those of opposer. Indeed, that such goods might come from a single source is shown by OSI's original application, which indicates OSI itself used the mark OCTOCOM for both modems and computer programs.

OSI points to no statement or analysis in the board's opinions which in any way supports OSI's argument that the board imposed a *per se* rule. A deliberate mischaracterization of an appealed decision goes beyond legitimate advocacy.

## C

### Alleged "Ignored" Facts

■ OSI argues that the board did not consider its evidence which establishes no likelihood of confusion, namely: that modems differ from computer programs; that it sold its goods principally to large institutions; that it promoted its goods through industrial trade magazines and trade shows relating to data communications hardware; that typical buyers are sophisticated purchasers; that its goods are expensive; and that there is no evidence of actual confusion.

Contrary to OSI's argument to us, we see no basis for saying the board "ignored" any part of the record. For example, the board specifically acknowledged OSI's evidence in stating:

Although [OSI] has attempted to establish specific trade channels for its goods, as we have previously noted, [OSI's] identification of goods is not limited in any manner and encompasses all of the normal trade channels and customers of any type, of any price, or for use with any computer program.

*Houston Computer Servs. v. Octocom Sys.*, Opp. No. 76345, slip op. at 11 (TTAB Aug. 2, 1989). The board also considered the argument that confusion was unlikely because of the alleged expertise of purchasing agents and found it neither controlling nor persuasive. As the board stated, confusion had to be considered with respect to users as well as actual purchasers. *Id.*

OSI's statement that the board "did not consider specific evidence presented by Octocom relating to the issue of likelihood of confusion" is without basis. The board's opinion specifically addresses the allegedly ignored evidence. The board's ultimate conclusion is simply not to OSI's liking. Again, OSI manufactures a nonexistent issue.

### D

### *The DuPont Factors*

In its brief and at oral argument, OSI's counsel took the position that under *DuPont*, once evidence is presented on a factor (*e.g.*, on an applicant's specific trade channels), such evidence is controlling regardless of the lack of any limitation in the applicant's description of goods reflecting the newly asserted limitation. OSI's interpretation of the *DuPont* case has long been rejected.

▆▆▆ The issue in an opposition is the right of an applicant to register the mark depicted in the application for the goods identified therein. The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which sales of the goods are directed. *See Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1042, 216 USPQ 937, 940 (Fed. Cir.1983); *Tuxedo Monopoly, Inc. v. General Mills Fun Group, Inc.*, 648 F.2d 1335, 1337, 209 USPQ 986, 988 (CCPA 1981);

*San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*, 565 F.2d 683, 684–85, 196 USPQ 1, 2 (CCPA 1977); *Broderick & Bascom Rope Co. v. Goodyear Tire & Rubber Co.*, 531 F.2d 1068, 1070, 189 USPQ 412, 413 (CCPA 1976); *Pennwalt Corp. v. Center Laboratories, Inc.*, 524 F.2d 235, 236, 187 USPQ 599, 601 (CCPA 1975); *Paula Payne Prods. Co. v. Johnson Publishing Co.*, 473 F.2d 901, 902, 177 USPQ 76, 77 (CCPA 1973); *International Paper Co. v. Valley Paper Co.*, 468 F.2d 937, 938, 175 USPQ 704, 705 (CCPA 1972); *Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 726, 156 USPQ 340, 342 (CCPA 1968); *Kalart Co. v. Camera–Mart, Inc.*, 258 F.2d 956, 957, 119 USPQ 139, 140 (CCPA 1958); and *Miles Laboratories, Inc. v. Naturally Vitamin Supplements, Inc.*, 1 USPQ2d 1445, 1450 (TTAB 1986) (amended 1987).

As the predecessor of this court stated in *Tuxedo Monopoly*, 648 F.2d at 1337, 209 USPQ at 988:

> Here, appellant seeks to register the word MONOPOLY as its mark without any restrictions reflecting the facts in its actual use which it argues on this appeal prevent likelihood of confusion. We cannot take such facts into consideration unless set forth in its application. *Toro Co. v. Hardigg Industries, Inc.*, 549 F.2d 785, 790, 193 USPQ 149, 155 (CCPA 1977).

▆▆ Here, as well, the factors which OSI asks to have considered are not reflected, either expressly or inherently, in its application. Thus, it was not error, as OSI argues, for the board to give no weight to OSI's evidence purporting to show that OCTOCOM modems are bought by a particular class of purchasers. It would have been error to do otherwise. Because OSI seeks an *unrestricted* registration, such evidence as there is of a specific class of customers did not relate to a *material* fact.[3] *See Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 836, 221 USPQ at 565

---

3. We must add that the evidence of record shows that about 60 percent of OSI's sales are to large buyers and 40 percent are to distributors who may sell to anyone. Accordingly, OSI's

argument concerning the difference in the parties' classes of purchasers is, in any event, without foundation.

(applicable legal standard determines *materiality* of alleged fact).

In essence OSI's argument concerning the *DuPont* factors is backwards. A factor listed in *DuPont* is not made material by submission of evidence on the point; rather, the factor must be shown to be material or relevant *in the particular* case before any evidence offered on the factor should be considered. Evidence that the goods of the applicant and opposer, as identified in the respective application and registration, are the types of goods that would be expected to move in different trade channels or be sold to different classes of purchasers may be material and relevant. *See David Crystal, Inc. v. Soo Valley Company*, 471 F.2d 1245, 176 USPQ 326 (CCPA 1973). However, an application with an identification of goods having no restriction on trade channels obviously is not narrowed by testimony that the applicant's use is, in fact, restricted to a particular class of purchasers. *Tuxedo Monopoly*, 648 F.2d at 1337, 209 USPQ at 988 (restricted outlets irrelevant when application not so limited). Thus, such evidence does not support OSI's alleged right to registration of the mark for the goods *set forth in the application* at issue.

OSI made no attempt to distinguish its situation from the voluminous precedent or even to argue that the precedent was wrong and should be overturned. OSI simply ignored it. This court deems such advocacy to be unacceptable. *See In re Oximetrix, Inc.*, 748 F.2d 637, 644, 223 USPQ 1068, 1073 (Fed.Cir.1984) (frivolous where no colorable basis for arguments).

### E

#### Conclusion on Likelihood of Confusion

OSI's applications originally encompassed modems and computer programs. In view of the judgments against OSI's registration of OCTOCOM (with or without the "O" design) for computer programs, it is indisputable that OSI's OCTOCOM marks and Houston's OCTACOMM mark would be likely to cause confusion when used for identically described goods.

Further, the record supports no other factual findings but that modems and computer programs are commonly used together in networking, could come from a single source, and be identified with the same mark. Thus, OSI's elimination of "computer programs" from its application leaving only "modems" was pointless maneuvering. We agree with the board that purchasers would likely be confused when goods as closely related as modems and computer programs are sold under the virtually identical marks of these parties. Thus, the board's decision denying registration to OSI of the OCTOCOM marks for "modems" is affirmed.

### III

#### Motion for Sanctions

Under Fed.R.App.P. 38, a court of appeals may award "just damages and single or double costs" where it determines that an appeal is frivolous. As this court held in *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554, 220 USPQ 193, 203 (Fed. Cir.1983), an appeal is frivolous where "no basis for reversal in law or fact can be or is even arguably shown." Houston seeks to recover its costs and attorney fees under Rule 38 in connection with this appeal.

Sanctions may be imposed in a summary judgment case as in any other. *Chemical Eng'g Corp. v. Marlo, Inc.*, 754 F.2d 331, 334–35, 222 USPQ 738, 741 (Fed. Cir.1984). We have indicated above the grounds for holding each of OSI's arguments to be frivolous. There was no reasonable basis for arguing that the board erred in holding that there were no material factual disputes; in applying a *per se* rule of confusion; in ignoring evidence; or in disregarding the *DuPont* factors.

Where a party blindly disregards long established authority and raises arguments with no factual foundation, as OSI has in this case, the judicial process has not been used, but abused, and sanctions under Rule 38 are warranted. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1486, 221 USPQ 649, 657 (Fed.Cir.), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240

(1984); *Connell*, 722 F.2d at 1555, 220 USPQ at 204; *Asberry v. United States Postal Serv.*, 692 F.2d 1378, 215 USPQ 921 (Fed.Cir.1982). Houston's request for sanctions is, therefore, granted to the extent of just damages and costs in connection with the appeal. Under Rule 38, an award may include an amount for attorney fees incurred by appellee. *See Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1256 (Fed.Cir.1990) (attorney fees awarded); *Pac–Tec. Inc. v. Amerace Corp.*, 903 F.2d 796, 804–05, 14 USPQ2d 1871, 1879 (Fed. Cir.1990) (attorney fees awarded); *Sun– Tek Indus. v. Kennedy Sky–Lites, Inc.*, 865 F.2d 1254, 9 USPQ2d 1574 (Fed.Cir. 1989) (attorney fees awarded); *Devices for Medicine v. Boehl*, 822 F.2d 1062, 1069, 3 USPQ2d 1288, 1294 (Fed.Cir.1987) (attorney fees awarded); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 887, 229 USPQ 814, 817–18 (Fed.Cir.1986) (attorney fees awarded); *Beghin–Say Int'l, Inc. v. Rasmussen*, 733 F.2d 1568, 1573–74, 221 USPQ 1121, 1125 (Fed.Cir.1984) (sanctions, but attorney fees not warranted). Houston shall submit documentation to the court of its costs and attorney fees within the time period set forth in Fed.Cir.R. 47.9(a).

AFFIRMED.

SANCTIONS IMPOSED.