THIS OPINION
IS A PRECEDENT
OF THE T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

al

Mailed: January 23, 2007

Opposition No. **91158304**

Hurley International LLC

v.

Paul and Joanne Volta

Before Quinn, Bucher, and Cataldo,
Administrative Trademark Judges.

By the Board:

Paul and Joanne Volta ("applicants") filed an

application on April 6, 2002 for registration of the mark

THE SIGN and design[1] in the following form:



in connection with the following services in International

Class 41:

>     Entertainment services, being vocal performances
>     and/or instrumental performances; production of
>     records, tapes, CD's, any digital media and films,
>     radio, television and internet entertainment.

---

[1] Application Serial No. 78119982.

The application was filed based on Trademark Act Section 1(a) reciting February 5, 2000 as the date of first use and May 19, 2000 as the date of first use in commerce. The listing of services was preceded by the following statement: "Applicant is using or is using through a related company the mark in commerce on or in connection with the below identified goods/services." The application was accompanied by a signed declaration attesting to the truth of the statements made in the application.

During the prosecution of the involved application, applicants amended the recitation of services twice, pursuant to two separate requirements made by the examining attorney. For each amendment the applicants made, the filing basis remained unchanged. Additionally, at two points during the prosecution of the application, the specimen submitted in support of the services was rejected for its failure to show use of applicants' mark in relation to the identified services. Twice the applicants submitted a substitute specimen accompanied by a signed declaration that "the substitute specimen(s) was in use in commerce as of the filing date of the application."

On May 28, 2003, the involved mark, for the services recited in the application as amended, was published for opposition in connection with the following services:

> Entertainment services, being vocal performances
> and/or instrumental performances by a musical band

2

or solo artist; production of records; audio recording and production; entertainment namely, production of television shows, plays; motion picture film production; production of video discs for others; production of video cassettes for others; radio entertainment production.

Hurley International LLC ("opposer") filed a notice of opposition to registration of applicants' mark on October 17, 2003 on the grounds that (1) a likelihood of confusion exists based on opposer's pleaded registration and common law rights based on its previously-used marks; and (2) applicants' nonuse of the mark in connection with some of the recited services.

On July 15, 2004, opposer filed its first motion for summary judgment based on a claim of fraud in applicants' filing of their application.  In an August 4, 2005 order, the Board denied such motion on the ground that fraud was not properly pled in the notice of opposition.

This case now comes up for consideration of (1) opposer's combined motion (filed October 5, 2005) for leave to amend its notice of opposition and for summary judgment;[2] and (2) applicants' motion (filed April 9, 2006) for leave to amend their application.

As an initial matter, applicants have admitted in their answer that opposer owns its pleaded registration.  Thus, opposer's standing, that is, its real interest in this

---

[2] Concurrently therewith, opposer filed an amended notice of opposition.

proceeding, has been established.  See *Lipton Industries Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

***Motion to Amend Notice of Opposition***

We first consider opposer's motion to amend the notice of opposition.  The motion has been fully briefed.

In support of its motion, opposer maintains that in response to opposer's discovery requests, applicants admit that they had not used at the time of filing their application, and have never used applicants' mark in U.S. commerce in connection with all the services recited in the involved application.  Opposer states that it seeks to "amplify the allegations made in its Notice of Opposition" by adding a claim of fraud.[3]

In response, applicants argue that permitting an amendment to the notice of opposition is "unduly prejudicial to the applicants" in that it will further delay applicants

---

[3] Specifically, the amended allegations read as follows:

> 13.  Upon information and belief, one or more material representations of fact was made by Applicans [sic] at the time of filing Applicants' Application and/or during the prosecution of Applicants' Application.
> 14.  It is alleged that Applicants knew or should have known that such misrepresentations of fact as referenced in Paragraphs 10, 11 and 12 herein were false and/or misleading.
> 15.  It is alleged that Applicants have committed fraud in attempting to procure a registration for Applicants' Mark, thus making Applicants' Application *void ab initio*.

"in their pursuit of their commercial interests in the entertainment industry."

In reply, opposer asserts that its amendment of the notice of opposition does not prejudice applicants and that all evidence relevant to the claim of fraud that may benefit applicants is already in the applicants' possession and control.

Leave to amend pleadings must be freely given when justice so requires, unless entry of the proposed amendment would violate settled law or be prejudicial to the rights of the adverse party. See Fed. R. Civ. P. 15(a); TBMP Section 507.02 (2d ed. rev. 2004) and cases cited therein. Where the moving party seeks to add a new claim or defense, and the proposed pleading thereof is legally insufficient, or would serve no useful purpose, the Board normally will deny the motion for leave to amend. See *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990). Thus, in deciding opposer's motion for leave to amend, the Board must consider whether there is undue prejudice to applicants and whether the amendment is legally sufficient. See, e.g., *Cool-Ray, Inc. v. Eye Care, Inc.* 183 USPQ 618, 621 (TTAB 1974).

We note that opposer's motion for leave to file an amended notice of opposition was filed prior to the start of trial and the record does not indicate that applicants would

be prejudiced by opposer's addition of a fraud claim to the likelihood of confusion claim set forth in its notice of opposition.

In addition, we note that the fraud claim is adequately pled in the amended notice of opposition. The allegations set forth in paragraphs 13 through 15, when read in conjunction with paragraphs 11 and 12 (which existed in the original pleading), sufficiently state a claim of fraud.

In view thereof, opposer's motion for leave to file an amended notice of opposition is hereby granted. The amended notice of opposition is now the operative pleading.

*Motion for Summary Judgment*

We next consider opposer's motion for summary judgment on the claim of fraud. The motion has been fully briefed.

In support of its motion, opposer argues that applicants have committed fraud in attempting to procure a registration for their involved mark, thus making the involved application *void ab initio*. Opposer asserts that applicants, at the time they filed their involved application, at the time they amended their recitation of services during the examination process, and to date were not and are not using applicants' mark in commerce in connection with all of the recited services. Specifically, opposer contends that applicants have admitted in their responses to opposer's discovery requests that they were not

6

and are not using the mark in commerce in connection with the following services:

> Production of records; audio recording and production; production of television shows, plays; motion picture film production; production of video discs for others; production of video cassettes for others; radio entertainment production.

Opposer further contends that applicants have admitted in their responses to opposer's interrogatories that they are not using the mark "anywhere in the world" in connection with the following services:

> Production of records; production of television shows, plays; motion picture film production; production of video discs for others; production of video cassettes for others; radio entertainment production.

Opposer argues that this case is analogous to the case of *Medinol Ltd. v. Neuro Vasx, Inc.,* 67 USPQ2d 1205 (TTAB 2003), in which fraud was found because there was no use of the involved mark on one of the two listed goods in the statement of use, and applicants admitted as much.

Additionally, opposer asserts that applicants have admitted in their responses to opposer's discovery requests that the substitute specimens submitted in support of their application was also not used in U.S. commerce at any point, let alone prior to the April 6, 2002 filing date of the application, and does not show

use of applicants' mark in connection with any of the recited services in the application in U.S. commerce.

Thus, opposer argues that the involved application is invalid because applicants falsely signed and filed the original application oath for their use-based application when applicants knew, or should have known, that they were not using applicants' mark in commerce on all the services recited and when applicants knew, or should have known, that the substitute specimen they submitted was not in use in U.S. commerce as of the application's filing date.

Opposer further argues that the involved application was signed by applicants themselves "who were clearly in a position to have personal knowledge of the facts concerning their own use of their mark on the services identified in the application in the United States"; that applicants reside in Australia, an English speaking country, and clearly have a strong understanding of the English language; that any claim by applicants that they were not made aware of the requirements for filing their application based on use in commerce under Section 1(a) would be baseless given the "wealth of information" provided on the USPTO's website for those who file their trademark applications electronically (such as applicants); that any claim by

8

applicants that they are not represented by counsel or are ignorant of the law is also meritless given the USPTO's online warning that applicants must comply with all substantive and procedural requirements of the Trademark Act and the Trademark Rules of Practice, even if they are not represented by attorneys; and that one of the applicants, namely, Joanne Volta, holds a bachelor's degree in law in Australia and as such "her education…should have provided her with enough understanding of the law in general to know the importance of closely reviewing legal documents and providing accurate information when completing legal documents…."

As evidentiary support for each of its motions, opposer has submitted: (1) a copy of the complete file history for involved application Serial No. 78119982; (2) opposer's first set of requests for admissions; (3) applicants' responses to certain of opposer's requests for admissions; (4) opposer's first set of interrogatories; (5) applicants' responses to certain of opposer's interrogatories; (6) web pages from the Patent and Trademark Office's website located at www.uspto.gov; (7) a copy of a web page from the website www.fact-index.com, indicating that the designation "LLB" or "Blaws" is used to indicate a

9

person who has graduated with a Bachelor's degree in law in Australia; (8) a copy of applicants' response to opposer's first motion for summary judgment filed on August 21, 2004; and (9) a declaration of Susan M. Natland, opposer's counsel.

In response to the motion, applicants contend that they did not commit fraud. They argue that they misunderstood the requirements necessary under Section 1(a) of the Trademark Act, did not understand the legal meaning of "use in commerce," and honestly believed that their ownership of the same mark in Australia and their use in commerce of such mark in Australia justified their Section 1(a) filing basis in the U.S. Applicants state that they are "musicians who are attempting to conduct their entertainment services in a business like fashion" and believed they were engaged in commerce sufficient for purposes of their Section 1(a) claim inasmuch as they had established a website "which is a global domain" and they "had sold compact discs" and "were engaged in the making and distribution of the same." Additionally, they argue that each time they were required by the examining attorney to amend the recitation of services or submit a substitute specimen, they did so in good faith and with the honest belief that they were providing the examining attorney with the information he or she requested. Applicants further

10

argue that because they have yet to obtain a registration for their mark, this case is distinguishable from the facts in *Medinol* and, consequently, fraud should not be found.

In addition to their "ignorance and misunderstanding of the process of the Trademark Office," applicants indicate that "Paul Volta suffered a major coronary infarct on the 4th of November 2003 and Applicants have been more concerned with the ongoing health problem presented by the coronary incident and were not as detailed in their response or defence as they should have been." Also, applicants argue that their ignorance of the law should not be held against them inasmuch as they are "defending themselves and have no legal representation as such."

In evidentiary support of their response, applicants have submitted several exhibits, including copies of two Australian registrations which they own for the same mark as involved herein.[4]

In its reply brief, opposer argues that although applicants allege that they misunderstood the law and did not intend to defraud the USPTO, applicants made false material representations that applicants "knew or should have known" were false. Opposer argues that applicants have failed to produce "a single piece of evidence or statement

---

[4] We note that the remaining exhibits submitted by applicants are irrelevant to our consideration of the issues herein.

11

in Applicants' Response" to demonstrate that applicants have "used Applicants' Mark in U.S. commerce in connection with any of the services" in the involved application. Additionally, opposer asserts that there is no genuine issue of material fact that applicants filed an application based on actual use of their mark in U.S. commerce and signed a declaration attesting to the truth of all the statements in the application, when they knew they had not used applicants' mark in connection with all the services recited in the application.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), and *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.,* 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987). When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to

demonstrate the existence of specific genuinely-disputed facts that must be resolved at trial.

The nonmoving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial. In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant." *Octocom Systems Inc.,* supra *at 1786, citing Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir. 1984). A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party. See *Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). Finally, in deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all reasonable inferences from underlying facts in favor of the nonmovant. *Id.*

Based on the record now before us and for the reasons discussed below, we conclude that summary judgment is appropriate because opposer has established that there are

no genuine issues of material fact remaining for trial with regard to its claim of fraud, and that it is entitled to a judgment on this ground.

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register. See *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir., 1986). A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence, leaving nothing to speculation, conjecture, or surmise. Any doubt must be resolved against the party making the claim. See *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981).

There is no dispute and no genuine issue of material fact that applicants filed an application based on use in commerce and signed a declaration attesting to the truth of all the statements in the application when they knew or should have known that they did not use the mark in connection with all the recited services, or that the substitute specimen used to support their application was not in use in U.S. commerce as of the filing date of the application.

Statements regarding the use of the mark on goods and services are certainly material to issuance of a

14

registration. See *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 77 USPQ2d 1917 (TTAB 2006)(fraud found based on misrepresentation regarding use of the mark on most of the goods identified in the filed applications); *First International Services Corp. v. Chuckles Inc.,* 5 USPQ2d 1628 (TTAB 1988) (fraud found in applicant's filing of application with verified statement that the mark was in use on a range of personal care products when applicant knew it was in use only on shampoo and hair setting lotion). See also, *General Car and Truck Leasing Systems Inc. v. General Rent-A-Car Inc.,* 17 USPQ2d 1398 (D.C. S.Fla. 1990), aff'g *General Rent-A-Car Inc. v. General Leaseways, Inc.,* Canc. No. 14,870 (TTAB May 2, 1988).

Despite applicants' assertions to the contrary, we agree with opposer that this case is similar to the *Medinol* case. In *Medinol,* a trademark application was filed, the mark was published, a statement of use was submitted, and a registration issued for "medical devices, namely, neurological stents and catheters." In response to a petition for cancellation, registrant admitted in its answer that the mark was not used on stents. The Board stated the following (at 1208):

> The fraud alleged by petitioner is that respondent knowingly made a material representation to the USPTO in order to obtain registration of its trademark for the identified goods. There is no question that the statement of use would not have been accepted nor would

> registration have issued but for respondent's misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used. (cites omitted).

Similarly, in this case there is no question that the application for registration under Section 1(a) of the Trademark Act would have been refused but for applicants' misrepresentation regarding their use of the mark on all the recited services in the application. It is irrelevant, despite what applicants would have us believe, that a registration has yet to issue for applicants' mark. The timing of the misrepresentation is immaterial. Whether the false statements alleging use of the mark in commerce occur at the time of filing the application, during the examination process, or at a later point during the USPTO's review of the statement of use, the result is the same--an application results in a registration improperly accorded legal presumptions in connection with goods and/or services on which the mark is not used.[5] Applicants have provided no compelling argument as to why the law allows for cancellation of a registration after it is obtained through fraud, but does not allow for the prevention of a registration when fraud is revealed and the issuance of a registration is imminent.

---

[5] We note, however, that a misstatement in an application as to the goods or services on which a mark has been used does not rise to the level of fraud where an applicant amends the application

16

In this case, applicants have admitted that as of the April 6, 2002 filing date of their involved application, they were not using the mark in U.S. commerce for the following services identified in the application: "production of records; audio recording and production; production of television shows, plays; motion picture film production; production of video discs for others; production of video cassettes for others; and radio entertainment production." Additionally, we agree with opposer that applicants' responses to opposer's interrogatories indicate that applicants likely are not even using the mark "anywhere in the world" on the following recited services: production of records; production of television shows, plays; motion picture film production; production of video discs for others; production of video cassettes for others; radio entertainment production. From the original filing of their application and throughout the prosecution thereof, applicants continued to assert their claim of use under Section 1(a) of the Trademark Act. In this instance, the law is clear that an applicant may not claim a Section 1(a) filing basis unless the mark was in use in commerce on or in connection with *all* the goods or services covered by the Section 1(a) basis as of the application filing date. 37 C.F.R. Section 2.34(a)(1)(i). *Cf. E.I. du Pont de Nemours &*

_____

prior to publication. See *Universal Overall Co. v. Stonecutter*

*Co. v. Sunlyra International, Inc.*, 35 USPQ2d 1787, 1791 (TTAB 1995). The involved application includes the following statement: "Applicant is using or is using through a related company the mark in commerce on or in connection with the…identified goods/services." Also, applicants signed the oath at the conclusion of the application under penalty of "fine or imprisonment, or both…that…willful false statements may jeopardize the validity of the application or any resulting registration…." Thus, as in *Medinol,* a material representation of fact with regard to use of the mark on particular services was made by the mark's owner(s) and that statement was relied upon by the USPTO in determining applicants' rights to the registration.

The fact that applicants allegedly misunderstood a clear and unambiguous requirement for an application based on use, were not represented by legal counsel, and were suffering health problems does not change our finding of fraud herein. It is well established that in *inter partes* proceedings "proof of specific intent is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false." *General*

---

*Mills Corp.,* 154 USPQ 104 (CCPA 1967).

*Car and Truck,* 17 USPQ2d at 1400-1401 (intent of the signatories not material to question of fraud).

As the Board determined in *Medinol*, *supra* at 1209, "the appropriate inquiry is…not into the registrant's subjective intent, but rather into the objective manifestations of that intent."  In *Medinol*, supra at 1209-1210, the Board concluded that the facts justified a finding of fraud:

> The undisputed facts in this case clearly establish that respondent knew or should have known at the time it submitted its statement of use that the mark was not in use on all of the goods.  Neither the identification of goods nor the statement of use itself was lengthy, highly technical, or otherwise confusing, and the President/CEO who signed the document was clearly in a position to know (or to inquire) as to the truth of the statements therein.

As previously indicated, applicants in the case before us have admitted that they were not using, and indeed never used, their mark for most of the recited services in U.S. commerce as of the April 6, 2002 filing date of their involved application.  Applicants were certainly in a position to have personal knowledge of the facts concerning their own use of their mark on the services identified in their application.

Similarly, they were clearly capable of availing themselves of the relevant information available on the USPTO website regarding the various filing bases and

their specific requirements.[6] Although applicants held an "honest belief" that their use of a similar mark in commerce in Australia warranted their filing their application under Section 1(a) in the U.S., they were under an obligation to investigate thoroughly the validity of such a belief before signing their application under certain penalties.[7] Moreover, applicants' asserted misunderstanding regarding the meaning of "use in commerce" was not reasonable. At

---

[6] As opposer correctly indicates, for example, when clicking on the "Use in Commerce" (Section 1(a)) base line item on the electronic application form which the applicants filled out, the following explanation is provided:

**Use in Commerce**

Choose this basis if actually already using the mark in commerce that the U.S. Congress may regulate (*i.e.*, interstate commerce, territorial commerce, or commerce between the United States and a foreign country) in connection with goods and/or services identified in the application. You must be able to provide the date of first use anywhere and the date of use in commerce that the U.S. Congress may regulate, and a specimen (sample of said use). Use may be by the applicant, the applicant's related company, or a licensee of the applicant. You may file under more than one basis, but you may not file an application based on both use in commerce under §1(a) and a bona fide intention to use a mark in commerce under §(b) for the identified goods and/or services (e.g., you cannot list "shirts" under Section 1(b) and Section 1(a), but you could list "shirts" under Section 1(b) and pants under Section 1(a)).

[7] Applicants' assertion that they believed they were engaged in commerce sufficient for purposes of their Section 1(a) claim because they had established a website for selling their compact discs is irrelevant to our analysis. The subject application involves services in Class 41 with no mention of compact discs.

the time they filed their application, they knew they were seeking a registration for their mark in the United States. It was unreasonable for them to believe, however "honest" such a belief, that the term "use in commerce" on a trademark application in the United States meant anything other than use of the mark in commerce in or with the United States, or even that use in commerce in Australia was the legal equivalent of use in commerce in the United States.

In considering opposer's claim of fraud regarding applicants' submission of a substitute specimen that was not used in U.S. commerce at any point, let alone prior to the April 6, 2002 filing date of the subject application, we similarly find that statements regarding specimens submitted in support of an application are certainly material to issuance of a registration. See for example, *Torres*, supra at 1485 (court found it material that specimen submitted for Section 9 renewal application was not currently in use and cancelled the registration). A registration filed under Section 1 will not be granted unless and until applicant files a verified statement, together with specimens, that it has used the mark in commerce. See Trademark Rules 2.56(a) and 2.59(a).

There is no question that applicants' application would have been refused but for applicants' misrepresentation

regarding its use of the submitted substitute specimen in U.S. commerce.  In submitting the specimen, applicants indicated that the "the substitute specimen was in use in commerce as of the filing date of the Application." However, in responding to opposer's discovery requests, applicants admit that the Kaos Café, the location indicated in the advertisement flyer submitted as a substitute specimen, is located in Australia.  Hence, it is clear that the substitute specimen was not in use in U.S. commerce as of the filing date of the involved application, or at any time for that matter, and, therefore, such specimen fails to demonstrate use of the applicants' mark in connection with any of the recited services in the application.  Inasmuch as applicants' material representations were false and applicants knew of or should have known such representations were false, we conclude that applicants have, again, committed fraud.

In view of the above, we find that applicants' material misrepresentations made in connection with their application were fraudulent and, therefore, the application is void ab initio.  Accordingly, summary judgment is entered in opposer's favor on the issue of fraud.

***Motion to Amend Application***

Applicants seek to amend the filing basis of their opposed application to Section 44(e) of the Trademark Act.

Although applicants could have originally based their application on their Australian registration under Section 44(e),[8] the proposed amendment does not serve to cure a fraud that was committed.  See *Medinol,* supra at 1208 (deletion of goods upon which the mark has not yet been used does not remedy an alleged fraud upon the Office).  In view of the above finding of fraud, we find that applicants' motion to amend is moot.

Accordingly, opposer's motion for summary judgment is granted.  The opposition is  sustained on opposer's claim of fraud.

In view of our finding of fraud, and inasmuch as opposer did not move for summary judgment as to likelihood of confusion, we need not reach the issue of likelihood of confusion.

---

[8] We note that our decision does not preclude applicants from filing a new application for their mark under Section 44(e) of the Act.