```
THIS OPINION
IS A PRECEDENT
OF THE T.T.A.B.
```

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

alinnehan

Mailed: April 9, 2007

Cancellation No. 92042991

Hachette Filipacchi Presse

v.

Elle Belle, LLC

Before Walters, Rogers, and Cataldo,
Administrative Trademark Judges

By the Board:

On March 15, 2000, Elle Belle LLC ("respondent") filed an application for registration of the mark ELLE BELLE in standard character form for the following goods in International Class 25:

> Clothing articles for men, women and children, namely, shirts, blouses, dresses, evening wear, skirts, trousers, vests, jerseys, pants, pajamas, t-shirts, socks and stockings, singlets, corsets, garters, underpants, petticoats, hats, head scarves, neckties, raincoats, overcoats, great coats, bathing suits, sports overalls, wind resistant jackets and ski pants.

The application was filed based on Trademark Act Section 1(a), reciting October 1995 as the date of first use and date of first use in commerce. The following statement preceded the identification of goods: "… applicant has adopted and is using the trademark shown in the accompanying

drawing on ….”  The application was accompanied by a signed declaration attesting to the truth of the statements made in the application.

On December 10, 2002, the application matured into Registration No. 2657739.

On February 27, 2004, Hachette Filipacchi Presse ("petitioner") filed a petition to cancel respondent's registration on the grounds of likelihood of confusion with petitioner's pleaded registrations, dilution, and fraud.  In its answer, respondent denied the salient allegations of the petition to cancel.

This case now comes up for consideration of petitioner's motion (filed April 26, 2006) for summary judgment in its favor on petitioner's claim of fraud.  The motion has been fully briefed.

As an initial matter, respondent has admitted in its responses to petitioner's first request for admissions that petitioner owns, uses, and has not abandoned its pleaded marks.  Thus, petitioner's standing, that is, its real interest in this proceeding, has been established.  See *Lipton Industries Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

In support of its motion for summary judgment, petitioner argues that respondent committed fraud in procuring the subject registration for its involved

2

mark.  Petitioner asserts that respondent, at the time it filed its involved application, knew that it was not using its mark in commerce in connection with a majority of the goods identified in the application. Specifically, petitioner contends that respondent has admitted in its responses to petitioner's first set of interrogatories that its use of the ELLE BELLE mark is limited to use "in association with the wholesale and retail sale of women's clothing and accessories" and that respondent's president corroborated this admission by testifying under oath in his discovery deposition that respondent had never used its mark on any men's or children's clothing and had not used its mark on over one-half of the twenty-three items of women's clothing it identified in its application.

Because an applicant must use its mark on all of the goods listed in its application in order to obtain a registration, petitioner argues that respondent's misrepresentations in its application were material to the USPTO's decision to issue the registration and that the USPTO would not have issued a registration for the ELLE BELLE mark but for respondent's misrepresentations; that respondent knew at the time it filed its application that the accompanying declaration was false; and that, accordingly, respondent's

3

registration should be cancelled on the ground of fraud.

As evidentiary support for its motion, petitioner has submitted, *inter alia*, the following: (1) petitioner's first request for admissions; (2) respondent's responses to petitioner's first request for admissions; (3) the February 23, 2005 declaration and accompanying exhibits of Fabienne Sultan, the IP Vice Manager for petitioner, filed in Opposition No. 91160096 involving opposer and a third party; (4) certain excerpts of the August 15, 2005 deposition of Parajmit Singh, respondent's president, and accompanying deposition exhibits including a copy of the application respondent submitted for its mark, a copy of the certificate of registration issued by the USPTO for respondent's mark, excerpts from respondent's website, and respondent's responses to petitioner's first set of interrogatories.

In response to the motion, respondent contends that it did not commit fraud. Respondent explains that in February 2000 it obtained counsel to prepare a trademark application for its mark ELLE BELLE and that in discussing the details of the application, respondent's president, Parajmit Singh, informed respondent's attorney that it was using its mark "in connection with women's clothing,

4

including shirts, blouses, dresses, evening wear, skirts, jerseys, pants, corsets, and head scarves, and *would likely also use it in the future* in connection with men's and children's clothing, and additional women's clothing, including trousers, vests, pajamas, t-shirts, socks and stockings, singlets, garters, underpants, petticoats, hats, neckties, raincoats, overcoats, great coats, bathing suits, sport overalls, wind resistant jackets and ski pants." Respondent contends that following such conversation, respondent's attorney, having misunderstood part of his discussion with Mr. Singh, prepared an application representing that respondent was currently using its mark on all the goods listed in the application. Such list, however, included those goods in connection with which Mr. Singh had told the attorney that respondent only had an intent to use the mark. Respondent further explains that its attorney did not personally review the application with respondent before respondent's president signed the application. Respondent asserts that it was unaware that the application indicated that respondent was at that time using its mark in connection with items for which respondent only intended to use its mark in the future; that Mr. Singh is an immigrant whose primary language is Punjabi, and not English; that Mr. Singh has difficulty comprehending legal documents like the subject trademark application, which are

5

difficult to comprehend even for native English speakers; that Mr. Singh was unaware that a trademark application "could only list those items that are being sold at that time under the applicant's mark;" that Mr. Singh's confusion and lack of knowledge was evident during his deposition where he readily stated that respondent had not used its mark on certain of the identified goods in the application; and that "throughout this cancellation proceeding" Mr. Singh has had difficulties communicating with his attorneys due to his lack of fluency in the English language. Respondent argues that petitioner has failed to provide any evidence that respondent would not have been granted a registration for its ELLE BELLE mark but for the alleged misrepresentation and that Mr. Singh's actions do not constitute fraud because the registration would have issued even if the application had "only listed the limited description of women's clothing."

In evidentiary support of its response, respondent has submitted: (1) certain excerpts from the August 15, 2005 discovery deposition of Parajmit Singh; (2) an affidavit of Parajmit Singh; and (3) an affidavit of Hui Ri Kim, counsel for respondent.

In its reply brief, petitioner argues that respondent's contention that its president did not understand what he was signing when he signed the

application declaration and did not have actual or specific knowledge that his declaration was false is unpersuasive, especially given that respondent was represented by legal counsel. Further, petitioner contends that respondent's claim that its president did not understand "the simple and straightforward language contained in the declaration" is unreasonable given that Mr. Singh is a U.S. citizen who has resided in the United States since 1984; studied English at one point in his life; took English classes when he moved to the United States; and has been in the retail fashion industry since coming to the United States and starting Elle Belle, Inc. Moreover, petitioner asserts that respondent was obligated to confirm the truth and accuracy of the statements contained in the subject trademark application prior to its submission to the USPTO and that any misunderstanding on the part of respondent's counsel when preparing the application and declaration should not preclude a finding of fraud.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a

7

matter of law.  See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), and *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.,* 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987).  When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely-disputed facts that must be resolved at trial.

The nonmoving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial.  In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant."  *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 940, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990)*, citing Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir. 1984).  A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party.  See

*Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). Finally, in deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all reasonable inferences from underlying facts in favor of the nonmovant. Id.

Based on the record now before us and for the reasons discussed below, we conclude that summary judgment is appropriate because petitioner has established that there are no genuine issues of material fact remaining for trial with regard to its claim of fraud, and that it is entitled to a judgment on this ground.

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register. See *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986). A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence, leaving nothing to speculation, conjecture, or surmise. Any doubt must be resolved against the party making the claim. See *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981).

There is no dispute and, in fact, respondent admitted that it had not used its mark in connection with a

significant number of the listed goods at the time it filed an application based on use in commerce which included a signed declaration attesting to the truth of all the statements in that application. Respondent's responses to petitioner's discovery requests indicate that respondent is not using the mark on any men's or children's clothing, nor is it using it on more than half of the women's clothing items listed. Mr. Singh specifically testified in his August 15, 2005 discovery deposition that his corporation is not using the mark on trousers, vests, pajamas, t-shirts, socks, stockings, singlets, underpants, hats, neckties, raincoats, overcoats, great coats, bathing suits, sports overalls, wind resistant jackets, and ski pants, all of which were listed in the application.

Statements regarding the use of the mark on goods and services are certainly material to issuance of a registration covering such goods and services. *First International Services Corp. v. Chuckles Inc.,* 5 USPQ2d 1628 (TTAB 1988) ("We find that applicant committed fraud in its statement regarding the use of the mark on goods for which it only intended to use the mark. There is no question that this statement was material to the approval of the application by the Examining Attorney.") See also *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 77 USPQ2d 1917 (TTAB 2006) (applicant's counterclaim petition to

cancel granted because of fraud by opposer in procuring its pleaded registrations, specifically, fraud found because of misrepresentations regarding extent of use of the marks on the goods identified in the applications which resulted in issuance of opposer's pleaded registrations); *General Car and Truck Leasing Systems Inc. v. General Rent-A-Car Inc.,* 17 USPQ2d 1398 (S.D. Fla. 1990), aff'g *General Rent-A-Car Inc. v. General Leaseways, Inc.,* Canc. No. 14,870 (TTAB May 2, 1988).

The facts herein are analogous to those in *Medinol Ltd. v. Neuro Vasx Inc.*, 67 USPQ2d 1205 (TTAB 2006). In *Medinol,* a trademark application was filed and, following applicant's submission of a statement of use, a registration issued for "medical devices, namely, neurological stents and catheters." In response to a petition for cancellation, registrant admitted in its answer that the mark was not used on stents. The Board stated the following:

> The fraud alleged by petitioner is that respondent knowingly made a material representation to the USPTO in order to obtain registration of its trademark for the identified goods. There is no question that the statement of use would not have been accepted nor would registration have issued but for respondent's misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used. (citations omitted).

67 USPQ at 1208 (citations omitted).

11

Similarly, in this case there is no question that the application for registration under Section 1(a) of the Trademark Act would have been refused but for respondent's misrepresentation regarding its use of its mark on all the identified goods in the application.  Respondent's contention that a registration would have issued nonetheless if the application listed only the limited description of women's clothing is irrelevant to our discussion.  In this instance, the law is clear that an applicant may not claim a Section 1(a) filing basis unless the mark was in use in commerce on or in connection with *all* the goods or services covered by the Section 1(a) basis as of the application filing date.  37 C.F.R. Section 2.34(a)(1)(i).  See, e.g., *First International Services Corp.,* supra, 5 USPQ2d at 1636. Respondent signed the oath at the conclusion of the application under penalty of "fine or imprisonment, or both…that…willful false statements may jeopardize the validity of the application or any resulting registration…." Thus, as in *Medinol,* a material misrepresentation of fact with regard to use of the mark on particular goods was made and sworn to by the mark's owner(s) and that statement was relied upon by the USPTO in determining respondent's rights to the registration.

That Mr. Singh may have been unaware that the statement in the application alleged use as to all the listed goods,

12

rather than use as to some and intent to use as to others, does not change our finding of fraud herein. Nor does the fact that English is not Mr. Singh's native language and he apparently has continuing difficulty with the language. The language contained in the subject application is clear and unambiguous. The wording "applicant has adopted and is using the trademark shown" which precedes the listing of goods is simple and straightforward. It is well established that in *inter partes* proceedings "proof of specific intent is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false." *Medinol*, supra 1209 (quoting *General Car and Truck,* 17 USPQ2d at 1400-1401). See also *First International Services Corp.,* supra, 5 USPQ2d at 1636 ("we recognize that it is difficult, if not impossible, to prove what occurs in a person's mind, and that intent must often be inferred from the circumstances and related statement made by that person. Otherwise, all claims of fraud could easily be defeated by the simple statement, 'I had no intent to do so.' The analysis must be whether the person knew or should have known of the falsity of the statement.")

As the Board determined in *Medinol*, "the appropriate inquiry is … not into the registrant's subjective intent, but rather into the objective manifestations of that

13

intent." 67 USPQ2d at 1209. In *Medinol*, the Board concluded that the facts justified a finding of fraud:

> The undisputed facts in this case clearly establish that respondent knew or should have known at the time it submitted its statement of use that the mark was not in use on all of the goods. Neither the identification of goods nor the statement of use itself was lengthy, highly technical, or otherwise confusing, and the President/CEO who signed the document was clearly in a position to know (or to inquire) as to the truth of the statements therein.

Id. at 1209-10.

Respondent's president's misunderstanding in the case before us does not now shield respondent from our finding that it knew or should have known that a representation of fact in its application was false. Mr. Singh was obligated to confirm the meaning and accuracy of the statements contained in the application before signing the declaration and prior to submission to the USPTO. "The obligation which the Lanham Act imposes on an applicant is that he will not make *knowingly* inaccurate or *knowingly* misleading statements in the verified declaration forming a part of the application for registration." *Bart Schwartz International Textiles, Ltd. v. Federal Trade Commission*, 289 F.2d 665, 669, 129 USPQ 258, 260 (CCPA 1961) (emphasis in original). Therefore, as indicated supra, an applicant or registrant may not make a statement he/she knew or should have known was false or misleading. *Medinol,* supra at 1209.

Nor does the misunderstanding on the part of respondent's attorney preclude our finding of fraud. Inasmuch as counsel represented respondent during the application process, respondent and its attorney shared the duty to ensure the accuracy of the application and the truth of its statements. See *Smith International*, supra, 209 USPQ at 1047 ("The error was … on the part of counsel or Smith in drawing up the document as such and on the part of the affiant in signing it. Even if the affidavit was prepared by its attorney, Smith must be held accountable for any false or misleading statements made therein.") See also Cooper, Lunsford, McCarthy and Ropski, "Fraud in the Trademark Office: A TMR Panel" 74 Trademark Reporter 50, 57-58 (Jan./Feb. 1984) (The client and the attorney "share the duty" to avoid fraud; the attorney must advise the client to tell the truth; the client must be candid; the attorney must seek facts supporting or possibly controverting application averments; and the attorney must be satisfied that the application is accurate and is supported by prevailing law.) In this instance, had respondent's counsel ensured that he understood what his client was telling him and reviewed the application with his client prior to obtaining the necessary signed declaration, the situation herein could have been prevented.

Additionally, a subsequent attempt by respondent to eliminate the goods on which its mark has never been used does not change our decision in this matter. On June 8, 2006, more than a month after petitioner filed its motion for summary judgment, respondent filed an amendment with the Post Registration section of the USPTO to limit the identification of goods so that it lists only the women's clothing on which it currently uses its mark.[1] On August 29, 2006, the Post Registration section entered the amendment. Where a registration is involved in a proceeding before the Board, it is the Board that has jurisdiction to determine the propriety of any proposed amendments to the registration. See Trademark Rule 2.133(a) and TBMP Section 514.01 (2d ed. rev. 2004). Thus, the amendment should not have been filed with the Post Registration section, and the fact that the Post Registration section mistakenly acted on the amendment does not preempt the Board's authority to determine the issue of fraud with respect to the original identification of the goods. Under the circumstances, the amendment will be given no effect. Nevertheless, we note that respondent's amendment would not serve to cure the fraud that was committed. See *Medinol,* supra at 1208

---

[1] Specifically, respondent sought to amend the identification of goods to read as follows: "Clothing articles women [sic], namely, shirts, blouses, dresses, evening wear, skirts, jerseys, pants, corsets, and head scarves" in International Class 25.

16

(deletion of goods upon which the mark has not yet been used does not remedy fraud upon the Office).[2]  Inasmuch as there are no genuine issues of material fact with regard to petitioner's claim of fraud in the procurement of respondent's trademark registration, the registration must be canceled in its entirety.  See *Standard Knitting*, 77 USPQ2d at 1928.

In view thereof, and inasmuch as petitioner did not move for summary judgment as to likelihood of confusion or dilution, we need not reach the issues of likelihood of confusion or dilution.

Accordingly, summary judgment is entered in petitioner's favor and the petition for cancellation is granted on the ground of fraud.[3]

---

[2] We note that respondent's amendment was filed after the commencement of this cancellation proceeding.  Whether an amendment to correct the description of goods that is submitted before a cancellation proceeding is filed would cure or remove fraud as an issue, is not currently before us.

[3] If respondent by appeal of this decision is able to obtain a reversal of our holding of fraud, or a remand to reconsider that issue, we note that the involved registration would require restriction.  Based on the record, it is clear that the goods in connection with which the mark was not in use at the time of filing the application must be deleted from the registration.