59 CCPA

**UNIVERSAL OIL PRODUCTS CO.,**
**Appellant,**

v.

**REXALL DRUG AND CHEMICAL CO.,**
**d.b.a. Fiberfil, Appellee.**

**Patent Appeal No. 8760.**

United States Court of Customs and Patent Appeals.

Aug. 3, 1972.

John T. Lanahan, attorney of record, for appellant; Sidney W. Russell, Arlington, Va., of counsel.

Paul R. Wylie, Robert L. Andersen, Los Angeles, Cal., attorneys of record, for appellant; Donald Diamond, Los Angeles, Cal., of counsel.

Before RICH, Acting Chief Judge, and ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board, reported in full at 164 USPQ 92 (1969), dismissing an opposition to the registration of PROCON for "reinforced synthetic resinous injection-molding materials in pellet or granular form."[1] We affirm.

The record indicates that appellee is a manufacturer of chemical prod-

---

1. Application Serial No. 264,341 filed February 9, 1967, with an alleged date of first use in commerce of December 28, 1966.

ucts including thermoplastic polymeric materials used in injection molding processes. One of appellee's witnesses testified that appellee, through its Fiberfil division, produces fiberglass-reinforced thermoplastics in pellet and granular form and devises its trademarks on the basis of the nature of the thermoplastic polymer and the fiberglass content. The witness stated that the mark PROCON applies to reinforced polypropylene wherein the fiberglass content is in the SUPER CONCENTRATE range, i.e., about 80% fiberglass concentration. We agree with appellant that the description of goods in appellee's application for trademark registration is not limited to that specific material, Feed Service Corp. v. FS Services, Inc., 432 F.2d 478, 480, 58 CCPA 708, 710 (1970), and we make note of this testimony only in the way of background information.

Appellant is in the chemical process industry and manufactures, among other things, catalytic materials in pellet and granular form. It owns all the assets of Procon, Incorporated (hereafter Procon, Inc.), a company which the record indicates has been engaged in the construction and maintenance of oil and chemical processing plants under the mark PROCON.[2] It appears that Procon, Inc., performs these services on plants such as would produce the goods described in appellee's application.

Appellant contends that its opposition is predicated on both §§ 2(a) and (d) of the Lanham Act, 15 U.S.C. § 1052(a) and (d). In its notice of opposition, appellant alleged that:

The trade, the purchasing public and the customers and potential customers of Opposer and Opposer's said subsidiary, upon learning of Applicant's product, or products, marketed under the Trademark PROCON, are likely to be confused and misled into

the belief that Applicant's goods are either manufactured and/or distributed by Opposer or Opposer's said subsidiary, Procon, Incorporated, or that the goods have been manufactured by Applicant under Opposer's supervision and specifications, whereby Opposer has been and will be damaged.

The board dismissed the opposition on two grounds. It first held that appellant "does not have the requisite interest to give it the standing to prevail herein." The board was of the view that notwithstanding the fact that Procon, Inc. is appellant's wholly owned subsidiary, it is independent of the parent corporation in various respects including control over the trademark and trade name PROCON. Appellant urges that it has a clear pecuniary interest in its subsidiary and that any damage to Procon, Inc., would result in damage to appellant. That is sufficient, appellant contends, for standing under § 13, 15 U.S.C. § 1063, which provides in pertinent part:

Any person who believes that he would be damaged by the registration of a mark upon the principal register may, upon payment of the required fee, file a verified opposition in the Patent Office * * *.

The board additionally held that even if appellant has standing to bring this opposition, it could not prevail since:

[T]he construction activities of Procon are in no way related to synthetic injection molding materials, and * * * there therefore would be no occasion for a likelihood of confusion or mistake in the fields of trade in which the parties are involved.

The board held the fact that appellant markets catalytic materials in pellet and granular form to be "of no controlling importance since the mark or trade

2. Of record is a registration to Procon, Inc., of the service mark PROCON, stylized by the enclosure of the term within an elongated diamond, for "Constructing, Altering, and Repairing Oil and Chemical Processing Plants." Reg. No. 584,013 registered December 22, 1953. However, the board held that appellant may not rely on this registration, and appellant expressly declines reliance thereon.

name 'PROCON' is in no way connected with these products."

## OPINION

### I. STANDING

■ We agree with appellant that the board erred in its decision on this threshold issue. The board stated that:

[W]e must consider all the facts presented to determine whether or not opposer exercises the prerequisite control over Procon in its use of its mark and trade name such as to give opposer a proper interest herein.

The test for resolving the standing issue implicit in that statement is, in our view, erroneous. Control over the mark or name relied upon is not determinative of standing to oppose. See Wilson v. Delaunay, 245 F.2d 877, 878–879, 44 CCPA 1019, 1021 (1957). Standing, within the meaning of § 13, supra, is found when the opposer establishes a real interest in the proceeding. Tanners' Council of America, Inc. v. Gary Industries Inc., 440 F.2d 1404, 1406–1407, 58 CCPA 1201, 1203–1204 (1971). See also Singer Mfg. Co. v. Birginal-Bigsby Corp., 319 F.2d 273, 277, 50 CCPA 1380, 1386 (1963).

In *Tanners' Council*, this court held that where an incorporated trade association had established a pecuniary interest which it justifiably believed would be damaged by the registration of the involved trademark, the association had standing under § 13 to oppose that registration even though it did not itself deal in goods. The court had found that the income of the association was dependent upon the income of its members and that registration of the involved mark could weaken the sales position of its members thereby ultimately reducing its own income. The association had shown a real interest in the proceeding, and this, the court held, was the gist of the requirement of § 13.

■ We think appellant here has at least as great a pecuniary interest as had the trade association in *Tanners' Council,* and, perhaps, an even greater one. As the parent corporation of a wholly owned subsidiary, appellant can reasonably believe that damage to the subsidiary will naturally lead to financial injury to itself. Section 13 requires only a belief of damage resulting from the applicant's registration, and while that belief must have some reasonable basis in fact, this statutory provision, as evidenced by *Tanners' Council,* has been liberally construed. Such a construction is especially justified when the public interest served by a trademark opposition proceeding is recognized. We conclude that appellant has a real interest in this proceeding and therefore standing to institute and maintain it.

### II. LIKELIHOOD OF CONFUSION

■ The inquiry under § 2(a) is essentially the same as that under § 2(d). Frederick Gash, Inc. v. Mayo Clinic, 59 CCPA —, —, 461 F.2d 1395, 1397 (1972); Morehouse Mfg. Corp. v. J. Strickland & Co., 407 F.2d 881, 888, 56 CCPA 946, 955 (1969). The question under each section, in this appeal, is whether the use of PROCON as applied to the goods described in appellee's application for trademark registration would be likely to cause confusion as to source in view of the prior use of PROCON to identify the services rendered by Procon, Inc. We agree with the board that Procon's construction services are unrelated to the goods to which appellee applies PROCON and that there is no likelihood of confusion. There is no indication that purchasers of chemical products would expect the source of thermoplastic pellets or granules to be Procon, Inc. since that firm is in the construction, not the production, end of the chemical process industry. The decision of the board dismissing the opposition on the ground that there is no likelihood of confusion is accordingly affirmed.

Affirmed.