This decision is a precedent of the
Trademark Trial and Appeal Board.

UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. Box 1451
Alexandria, VA  22313-1451

Baxley

Mailed:  March 7, 2008

Cancellation No. 92045172

Herbaceuticals, Inc.

v.

Xel Herbaceuticals, Inc.

Before Quinn, Rogers and Cataldo,
Administrative Trademark Judges

By the Board:

Xel Herbaceuticals, Inc. ("Xel") owns six registrations
for various permutations of the mark XEL HERBACEUTICALS,
both as a word mark and with a design component.[1]

---

[1] Xel's registrations, each of which include a disclaimer of
HERBACEUTICALS, are as follows:
  Registration No. 2845260, issued May 25, 2004, for the mark XEL
HERBACEUTICALS in standard character form and Registration No.
2860543, issued July 6, 2004, for the mark XEL HERBACEUTICALS and
design, both for "teas; herbal teas for food purposes, green
teas, black teas, iced teas, coffee based beverages containing
milk, herbal teas and chicory based coffee substitute; functional
foods, namely, chocolate-based ready-to-eat food bars, candy
bars, granola-based snack bars, bread, processed cereals,
breakfast cereals, biscuits and cakes; noodles and pasta; candy,
chewing gum, bubble gum; ice cream, frozen yogurt and ice cream
substitute; functional beverages, namely, grain-based food
beverage containing oats or oat extracts" in International Class
30;
  Registration No. 2948354 for the mark XEL HERBACEUTICALS in
standard character form and Registration No. 2948359 for the mark
XEL HERBACEUTICALS and design, both issued May 10, 2005, and both
for "skin care preparations, namely, anti-wrinkle, moisturizing,
skin lightener and skin-firming creams, lotions, toners,
cleansers, moisturizers, gels, emulsions, serums, facial mask
packs, cleansers, eye treatments, and face and body powder,
creams; cosmetics, namely, foundation, blushers, blemish touch-up
sticks, mascara, eyeshadow, eyeliner, eye makeup, lipstick, lip

Herbaceuticals, Inc. ("HCI") seeks to cancel all six of Xel's registrations on the grounds of: 1) fraud, based on Xel's failure to have used its marks on all of the goods set forth in the respective identifications of goods of the involved registrations at the time it filed its statements of use in the underlying applications; and 2) likelihood of confusion with HCI's previously used and registered mark HCI HERBACEUTICALS, INC. and design for "cosmetics, namely body and facial skin lotions, creams and powders, body and facial skin cleansers, bath oils and beads, shampoos and conditioners" in International Class 3,[2] and its previously used mark HERBACEUTICALS for "cosmetic, dietary, and cleansing products."

---

pencil, nail enamel, nail care treatments, sun block, after-sun balm, deodorant, anti-perspirant, perfume and cologne; hair care preparations, namely, hair shampoo, hair conditioner, hair cream rinse, hair spray, hair mousse, hair treatments, hair gel, hair moisturizer" in International Class 3;
  Registration No. 2970979 for the mark XEL HERBACEUTICALS in standard character form and Registration No. 2970981 for the mark XEL HERBACEUTICALS and design, both issued July 19, 2005, and both for "pharmaceuticals, namely, antihypertension agents, diuretics, anorexigenics, fungistatic and fungicidal agents, analgesics, hormonal agents, antitussive agents, sedatives, cardiac agents, antimicrobial and antibacterial agents, anticancer agents and medicine filled patches; herbal dietary nutritional supplements and vitamins" in International Class 5.

[2] Such mark is shown in Registration No. 2585974 in the following form,



.

Xel, in its answer, denied the salient allegations of the petition to cancel, asserted affirmative defenses, including laches, and included a counterclaim to cancel HCI's pleaded registration on the ground of genericness. HCI denied the salient allegations of the counterclaim in its answer.

This case now comes up for consideration of HCI's motion (filed December 5, 2006) for summary judgment on its pleaded fraud claim with regard to all six of Xel's involved registrations. The motion has been fully briefed.

In support of its motion, HCI contends that Xel disregarded the truth as well as the seriousness of the oath in the statements of use that it filed in connection with the applications resulting in Xel's involved registrations; and that Xel's pattern of conduct evinces a disregard for Office practice and procedure and a desire to obtain trademark rights to which it is not entitled. In particular, HCI contends that Xel was not using its marks on all the goods identified in the respective notices of allowance, when it filed its statements of use.

With regard to Registration Nos. 2948354, and 2948359 for goods in International Class 3, HCI contends that Xel knew or should have known that it was not using the subject marks on serums, facial mask packs, face powder, body powder, foundation, blushers, blemish touch-up sticks,

mascara, eye shadow, eyeliner, eye makeup, lipstick, lip pencil, nail enamel, nail care treatments, perfume, cologne, hair care preparations, hair shampoo, hair conditioner, hair cream rinse, hair spray, hair mousse, hair treatments, hair gel, and hair moisturizer in International Class 3 when it filed its statements of use.   With regard to Registration Nos. 2845260 and 2860543 for goods in International Class 30, HCI contends that Xel knew or should have known that it was not using the mark on coffee based beverages containing milk, chicory based coffee substitute, chocolate-based ready-to-eat food bars, candy bars, granola-based snack bars, bread, processed cereals, breakfast cereals, biscuits, cakes, noodles, pasta, chewing gum, bubble gum, ice cream, frozen yogurt, ice cream substitute, and grain-based food beverage containing oats or oat extracts.  With regard to Registration Nos. 2970979 and 2970981 for goods in International Class 5, HCI contends that Xel knew or should have known that it was not using the mark on any of the goods recited therein.  HCI further contends that, by virtue of its ownership of Registration Nos. 2585974 and 2822094 for the mark HCI HERBACEUTICALS, INC and design and its use since 1992 of the mark HERBACEUTICALS for cosmetic, dietary and cleansing products, it has standing to pursue this cancellation proceeding.  Based on the foregoing, HCI contends that there is no genuine issue of material fact

that Xel's involved registrations were obtained fraudulently and that they should be cancelled.

As evidence in support of its motion, HCI has submitted a declaration of HCI's attorney, Abigail Rubenstein, through which HCI makes of record: a) status reports from the USPTO's Trademark Applications and Retrieval (TARR) database for the involved registrations; b) copies of the statements of use for the involved registrations; c) copies of Xel's responses to certain discovery requests; d) documents produced by Xel in discovery; e) certified copies of HCI's Registration Nos. 2585974 and 2822094; and f) copies of dictionary definitions of the words "tea," "tea bag," and "pharmaceutical."

In opposition, Xel contends that HCI does not have standing to pursue this cancellation because the mark in its pleaded registrations is generic; that the statements made in its involved statements of use were not false because Xel stated in the declaration, i.e., the "sworn portion" thereof, that the marks were in use on "the goods/services," as opposed to "all the goods services;" that Xel's attorney, who signed the statements of use, attested to the statements made therein "on information and belief" and was not required to have actual knowledge of each good on which the marks were used; that Xel did not intend to receive trademark rights to which it is not entitled; that any false

statements made in the statement of use are immaterial to the goods on which the marks are in use; that the examining attorney had determined that Xel was entitled to registrations for the complete identifications of goods at issue; that the proper remedy under the circumstances is partial cancellation of the registrations; and that HCI is estopped from pursuing the petition to cancel on the doctrine of laches.

As evidence in opposition to the motion for summary judgment, Xel submitted a declaration of its attorney, Peter M. de Jonge, through which Xel makes of record: a) copies of documents produced by Xel in discovery which purportedly show the word "herbaceutical(s)" used generically by others; b) a copy of HCI's responses to Xel's interrogatories; and c) a copy of a December 18, 2000 cease and desist letter from HCI's former attorney to Xel's attorney that was produced by HCI during discovery.

In reply, HCI contends that it has standing to pursue its petition to cancel regardless of whether or not the term HERBACEUTICALS is generic; that Xel's attempts to divide the statements of use into sworn and unsworn sections is "absurd;" that Xel's false statements were material to the registration of the subject marks; that the appropriate remedy under the circumstances is complete cancellation rather than amendment of the involved registrations; and

6

that laches is unavailable as an affirmative defense against a claim of fraud.

As an initial matter, Xel's contention that petitioner's petition to cancel is barred by laches is incorrect.  Laches is unavailable as an affirmative defense against a claim of fraud.[3]  See *Bausch & Lomb, Inc. v. Leupold & Stevens Inc.*, 1 USPQ2d 1497, 1499 (TTAB 1986).

We turn next to HCI's motion for summary judgment. Summary judgment is an appropriate method of disposing of a case in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law.  See Fed. R. Civ. P. 56(c).  A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party.  See *Old Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). In deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all reasonable inferences from underlying facts in favor of the nonmovant.  See *id.*

---

[3] "[I]t is within the public interest to have registrations which are void ab initio stricken from the register and that this interest or concern cannot be waived by the inaction of any single person or concern no matter how long the delay persists." *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 146 USPQ 313 (TTAB 1965), aff'd, 377 F.2d 1001, 153 USPQ 749 (CCPA 1967).

A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to entry of judgment as a matter of law.  See *Celotex Corp v. Catrett*, 477 U.S. 317 1986; *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987).  When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely disputed facts that must be resolved at trial.  The nonmoving party may not rest on the mere allegations of its pleadings and arguments in response to the motion, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial.  In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant."  *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990), *citing Barmag Barmer Maschinentfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 221 USPQ 561, 564 (Fed. Cir. 1984).

As a preliminary matter, we find that there is no genuine issue of material fact as to HCI's standing. HCI included as an exhibit to its motion for summary judgment a certified copy of pleaded Registration No. 2585974 showing that the registration is in full force and effect and owned by HCI.[4] Such copy is sufficient to show that there is no genuine issue of material fact that HCI has a real interest in the proceedings, i.e., a personal interest in the outcome of the proceeding, and a reasonable basis for a belief of damage. See, e.g., Trademark Act Section 14(a), 15 U.S.C. Section 1064(a); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Universal Oil Prod. Co. v. Rexall Drug & Chem. Co.*, 463 F.2d 1122, 174 USPQ 458, 459 (CCPA 1972). Even if we assume, for the sake of argument, that the word "herbaceutical" is generic, this does not void HCI's standing.

We turn next to the merits of the motion for summary judgment with regard to the pleaded fraud claim. Based on the record now before us, and for the reasons discussed below, we conclude that HCI is entitled to entry of partial summary judgment on the fraud claim. HCI has made a *prima*

---

[4] HCI also relies upon its unpleaded Registration No. 2822094 in support of its claim to standing. HCI may not rely upon an unpleaded registration in support of its claims. See TBMP Section 314 (2d ed. rev. 2004). If HCI wants to rely upon its Registration No. 2822094, it must seek leave to amend its petition to cancel to rely on such. See Fed. R. Civ. P. 15(a); TBMP Section 507.02(a) (2d ed. rev. 2004).

*facie* showing that there are no genuine issues of material fact remaining for trial with regard to the asserted fraud in the procurement of Registration Nos. 2845860, 2860543, 2948354, and 2948359, which showing Xel has failed to rebut. We also find, however, with regard to remaining Registration Nos. 2970979 and 2970981, that there are genuine issues of material fact which remain for trial.

An applicant may file a statement of use only when the applicant has made use of the mark in commerce on or in connection with all of the goods or services, as specified in the notice of allowance, for which applicant seeks registration, unless the statement of use asserts use on only some goods or services and either deletes those goods and/or services on which the mark is not in use or is accompanied by a request in accordance with Trademark Rule 2.87 to divide out from the application the goods or services to which the statement of use pertains. See Trademark Rule 2.88(c); TMEP Section 1109.03 (5th ed. 2007).

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register. See *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986). A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence,

10

leaving nothing to speculation, conjecture, or surmise.  Any doubt must be resolved against the party making the claim. See *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981).

Statements regarding the use of the mark on the identified goods and/or services are certainly material to issuance of a registration.  See *Hachette Fillipacchi Presse v. Elle Belle, LLC*, 85 USPQ2d 1090 (TTAB 2007) (fraud found based on applicant's allegation of use of its mark for a wide variety of clothing items for men, women and children when mark had not been used for any identified items for men or children and only for a limited number of items for women); *Sinclair Oil Corporation v. Kendrick,* 85 USPQ2d 1032 (TTAB 2007) (fraud found based on applicant's allegation of use of its mark in connection with retail store services when mark had only been used on a small number of product samples, which were given away four years prior to the filing of the application); *Hurley International LLC v. Volta*, 82 USPQ2d 1339 (TTAB 2007) (fraud found based on applicants' allegation of use of their mark for various entertainment services and production services, when mark had not been used anywhere in the world for some of the services and had not been used in commerce with or in the United States for other services); *Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 77 USPQ2d 1917 (TTAB 2006)

(counterclaim petition for cancellation of petitioner's pleaded registrations granted when fraud found based on misrepresentation regarding use of the mark on most of the goods identified in the filed applications); *First International Services Corp. v. Chuckles Inc.,* 5 USPQ2d 1628 (TTAB 1988) (fraud found in applicant's filing of application with verified statement that the mark was in use on a range of personal care products when applicant knew it was in use only on shampoo and hair setting lotion).

Contrary to Xel's assertion, partial cancellation is not the appropriate remedy here. Partial cancellation would merely place Xel in the same position in which it would have been had it filed statements of use which accurately reflected the goods on which the marks were being used. Rather, if fraud can be shown in the procurement of a registration, the registration is void in the international class or classes in which fraud based on nonuse has been committed.[5] See *General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car Inc*., 17 USPQ2d 1398, 1401 (S.D. Fla.

---

[5] Xel's reliance upon *Grand Canyon West Ranch LLC v. Hualapai Tribe,* 78 USPQ2d 1696 (TTAB 2006), in support of its contention that partial cancellation is the appropriate remedy under the circumstances is misplaced. In that case, the Board found that, in view of applicant's nonuse of the involved mark on some of the services identified in the involved application, partial judgment as to the goods for which use of the mark was not made was appropriate. However, that was because no fraud claim had yet been pleaded and the Board was only concerned with the question of use or non-use for particular items.

1990), *aff'g General Rent-A-Car Inc. v. General Leaseways, Inc.*, Canc. No. 14,870 (TTAB May 2, 1998).

This case is similar to *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 USPQ2d 1205 (TTAB 2003). In *Medinol*, a trademark application was filed, the mark was published, a statement of use was submitted, and a registration issued for "medical devices, namely, neurological stents and catheters." In response to a petition for cancellation, registrant admitted in its answer that the mark was not used on stents. The Board stated as follows:

> The fraud alleged by petitioner is that respondent knowingly made a material representation to the USPTO in order to obtain registration of its trademark for the identified goods. There is no question that the statement of use would not have been accepted nor would registration have issued but for respondent's misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used. (cites omitted).

*Id.* at 1208.

In response to requests for admission in this case, Xel admitted that it was not using in commerce the marks ultimately registered under Nos. 2948354 and 2948359 for the following goods in International Class 3 even though they were listed in the statements of use Xel filed:  serums, facial mask packs, face powder, body powder, foundation, blushers, blemish touch-up sticks, mascara, eye shadow, eyeliner, eye makeup, lipstick, lip pencil, nail enamel, nail care treatments, perfume, cologne, hair care

preparations, hair shampoo, hair conditioner, hair cream rinse, hair spray, hair mousse, hair treatments, hair gel, and hair moisturizer.  Xel further admitted that it was not using in commerce the marks ultimately registered under Nos. 2845260 and 2860543 for the following goods in International Class 30 even though they were listed in the statements of use Xel filed:  coffee based beverages containing milk, chicory based coffee substitute, chocolate-based ready-to-eat food bars, candy bars, granola-based snack bars, bread, processed cereals, breakfast cereals, biscuits, cakes, noodles, pasta, chewing gum, bubble gum, ice cream, frozen yogurt, ice cream substitute, and grain-based food beverage containing oats or oat extracts.

The nature of the goods identified in the notices of allowance at issue was not complicated or highly technical. The mark was either in use on all of those goods, or it was not.  Notwithstanding that the marks at issue were not in use on many of the goods identified in the respective notices of allowance, Xel's attorney signed each of the statements of use averring use for "all goods and/or services listed in the application or Notice of Allowance." Such statements were made in each case under penalty of "fine or imprisonment, or both, ... and [knowing] that such willful false statements may jeopardize the validity of the application or any resulting registration…."  Even if Xel's

14

attorney was signing the statements of use based on information and belief, he was clearly in a position to know (or to inquire) as to the truth of the statements providing reason to believe.  Statements under oath are made with a degree of solemnity requiring thorough investigation prior to signature and submission to the USPTO.  See *id.* at 1209; Patent and Trademark Office Rule 10.18(b)(2).

Xel's apparent belief that statements of use are divisible into unsworn and "sworn portion[s]" is incorrect. A declaration relates to all statements in the document of which the declaration is a part.  See *Medinol Ltd. v. Neuro Vasx, Inc., supra* at 1209.  Treating statements of use as divided into sworn and unsworn sections would encourage applicants to conclude that they could make misrepresentations willfully and without penalty.

We reject Xel's contention that use of the wording "*all* goods and/or services" in the body of the statements of use and "*the* goods/services" in the supporting declaration gives the respective phrases different meanings.  (emphasis added) In the declaration for each statement of use, Xel's attorney averred that Xel was "using the mark in commerce or in connection with the goods/services identified above."  The goods identified above in the body of the statements of use are "all goods and/or services listed in the application or

15

Notice of Allowance."  Accordingly, the wording at issue is synonymous.

The undisputed facts in this case clearly establish that Xel knew or should have known at the time it submitted its statements of use that the mark was not in use on all of the goods identified in the notices of allowance at issue. Considering that Mr. de Jonge admitted in his declaration that he did not have actual knowledge as to the goods on which the involved marks were being used, he was obligated to inquire.  See Patent and Trademark Office Rule 10.18(b)(2).  To the extent he did inquire, his inquiries would appear to have been grossly insufficient.  See *Medinol Ltd. v. Neuro Vasx, Inc.*, *supra* at 1209.  The specific or actual intent of Mr. de Jonge is not material to the question of fraud.  "[P]roof of specific intent to commit fraud is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false."  *General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car Inc.*, *supra*. While it is clear that not all incorrect statements constitute fraud, the relevant facts in this record allow no other conclusion.  We find that Xel's material misrepresentations made in connection with its statements of

use in the underlying applications for Registration Nos. 2845860, 2860543, 2948354, and 2948359 were fraudulent.

With regard to Registration Nos. 2970979 and 2970981, however, we note that, in responses to HCI's requests for admission, Xel denied that it had not used the goods in International Class 5 identified in the notices of allowance when it filed the statements of use in the underlying applications for those registrations.  We further note that, in response to HCI's interrogatory in which Xel was asked to identify each good sold under its involved marks, Xel responded, in relevant part, that it "markets and sells green tea related goods which have a variety of uses including uses as antihypertension agents, diuretics, anorexigenics, fungistatic agents, fungicidal agents, analgesics, hormonal agents, antitussive agents, sedatives, cardiac agents, antimicrobial and antibacterial agents, anticancer agents, medicine filled patches, herbal dietary supplements and vitamins...."  Based on these responses, we find, resolving any doubt in favor of Xel as the nonmovant, that there is a genuine issue of material fact as to whether use of the mark on "green tea related goods" constitutes use on the "pharmaceuticals" in International Class 5 identified in the notices of allowance at issue, and as to whether Xel's attorney had a reasonable basis for a belief that the marks were being used in interstate commerce on such

17

"pharmaceuticals" when Xel filed the statements of use in the underlying applications for those registrations. See *Maids to Order of Ohio Inc. v. Maid-to-Order Inc.*, 78 USPQ2d 1899 (TTAB 2006). While we are inclined to doubt that use of the marks on "green tea related goods" would constitute use of those marks on "pharmaceuticals," that issue is one for trial and not one for which HCI has shown a current entitlement to judgment.

In view thereof, HCI's motion for summary judgment is granted with regard to Registration Nos. 2845860, 2860543, 2948354, and 2948359, but denied with regard to Registration Nos. 2970979 and 2970981. Accordingly, Registration Nos. 2845860, 2860543, 2948354, and 2948359 will be cancelled in their entireties upon final disposition of this case.[6] Proceedings herein are resumed. Discovery and testimony periods are reset as follows.

| | |
|---|---|
| THE PERIOD FOR DISCOVERY TO CLOSE: | March 21, 2008 |
| 30-day testimony period for HCI Plaintiff in the cancellation to close: | June 19, 2008 |
| 30-day testimony period for Xel as defendant in the Cancellation and as plaintiff in the counterclaim to close: | August 18, 2008 |

30-day testimony period for HCI as defendant

---

[6] The parties are reminded that our decision granting partial summary judgment is interlocutory in nature and may not be appealed until a final decision is rendered in the proceeding. See *Copeland's Enterprises Inc. v. CNV Inc.*, 887 F.2d 1065, 12 USPQ2d 1562 (Fed. Cir. 1989).

18

in the counterclaim and its rebuttal testimony
as plaintiff in the cancellation to close:                              October 17, 2008


15-day rebuttal testimony period for Xel as plaintiff
in the counterclaim to close:                                          December 1, 2008

**Briefs shall be due as follows:**
**[See Trademark rule 2.128(a)(2)].**


Brief for plaintiff in the cancellation shall be due:                  January 30, 2009


Brief for defendant in the cancellation and as
Plaintiff in the counterclaim shall be due:                            March 1, 2009


Brief for defendant in the counterclaim and its reply
brief (if any) as plaintiff in the cancellation
shall be due:                                                          March 31, 2009


Reply brief (if any) for plaintiff in the
counterclaim shall be due:                                             April 15, 2009

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.125. An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.