NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL DALTON,**
*Appellant,*

v.

**HONDA MOTOR CO., LTD.,**
*Appellee.*

---

2011-1077

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board. (Opposition No. 91173105).

---

Decided: June 13, 2011

---

MICHAEL DALTON, Cincinnati, Ohio, pro se.

DYAN FINGUERRA-DUCHARME, White & Case, LLP, of New York, New York, for appellee.

---

Before PROST, MOORE and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Michael Dalton ("Dalton") appeals from the final decision of the Trademark Trial and Appeal Board ("the Board") sustaining Honda Motor Co., Ltd.'s opposition and refusing Dalton's registration of the mark "DEALERDASHBOARD" on grounds that it is merely descriptive. *Honda Motor Co., Ltd. v. Dalton*, 2010 TTAB LEXIS 358 (T.T.A.B. Aug. 6, 2010) ("Board Decision"). For the reasons explained below, we *affirm*.

BACKGROUND

Dalton has applied to register the mark DEALERDASHBOARD for the following International Class 35 services:

> providing automotive dealerships managerial information concerning their Sales, Service, and Parts departments key financial indicators of how their dealership is performing via the Internet; and providing a web site featuring information about automobile dealerships, automobiles, automotive parts and accessories, at which users can link to the retail or wholesale web sites of others.

Appendix ("A") 20. Dalton asserted October 5, 1999 as the date of first use of the mark in commerce.

In May 2006, Dalton sent a cease and desist letter to American Honda Motor Co., Inc. ("American Honda"), demanding that it cease using the mark DEALERDASHBOARD on its network. In the letter, Dalton informed American Honda that he owned the trademark/service mark DEALERDASHBOARD and operates the website DealerDashboard.com, which offers services to automotive dealerships. According to Dalton, it was brought to his attention that American Honda was using that same mark "to offer competing service to [its]

dealer body." The record reflects that American Honda is a wholly-owned subsidiary of Honda Motor Co., Ltd.

On September 27, 2006, Honda Motor Co., Ltd. ("Honda") filed a Notice of Opposition on grounds that the DEALERDASHBOARD mark "is a generic term, or, at best, a merely descriptive term." A26. Honda explained that it is a corporation organized under Japanese law and that, through its subsidiaries and affiliates, it "manufactures, markets and sells, among other products, automobiles, motorcycles, motor scooters and all-terrain vehicles throughout the world." A25.

In the Notice of Opposition, Honda alleged, among other things, that: (1) "dashboard" is a "term of art in the Internet industry, denoting a user interface for organizing and displaying key information"; (2) it uses the term "dealer dashboard" on its internal network, which is accessible only to authorized Honda dealers, "to describe a tool that presents information to its authorized dealers about their sales, service and parts departments"; and (3) registration of the DEALERDASHBOARD mark would damage Honda because it "may subject [it] to an infringement suit" for using the "descriptive designations "Dealer Dashboard" or "Dashboard."

Dalton filed an Answer on January 6, 2007, in which he: (1) denied that the DEALERDASHBOARD mark was generic; and (2) argued that the Board lacked jurisdiction over Honda because it is a foreign corporation organized under the laws of Japan. Dalton also claimed that he "invested extensive time and resources" making DEALERDASHBOARD a "source identifier" and that it has become "alternatively distinctive and famous within

the automotive industry." Doc. 8, Answer at 5 (Jan. 6, 2007).[1]

During the course of the Board proceedings, Honda served Dalton with interrogatories and document requests. When Dalton failed to respond to the discovery requests, Honda filed a motion to compel. In response, on April 2, 2007, Dalton filed a motion to dismiss, motion for sanctions, or in the alternative, motion to strike. In his motion, Dalton sought dismissal for failure to state a claim and for lack of jurisdiction. He also sought to strike Honda's discovery requests and motion to compel.

In an order dated February 29, 2008, the Board: (1) denied Dalton's motion to dismiss on grounds that it was untimely, since it was filed roughly three months after he filed his answer; (2) granted Honda's motion to compel discovery requests; and (3) ordered Dalton to provide, without objection, "full and proper responses" to the discovery requests within thirty days. Dalton failed to comply with the Board's order, and subsequently sought to introduce documents and evidence not produced in discovery during his testimony deposition. Honda objected to the use of those documents on grounds that they were not previously produced and raised additional objections, including hearsay and lack of foundation.

Honda sought and obtained an extension of time which reset its 30-day testimony period to close on October 27, 2008. As such, Honda's testimony period opened on September 28, 2008 and continued until October 27, 2008. Notwithstanding this timeframe, Honda conducted a trial deposition of Cynthia Mangham on September 16, 2008. Mangham, the Manager of the Interactive Network

---

[1] Citations to documents found on the TTAB online docket system are identified by docket number, title, date, and page number.

Marketing and Rollout for American Honda, testified that, in 2004, American Honda began using the term "dealer dashboard" on its internal network to communicate "key operating indicators" to automotive dealers.

Dalton did not participate in Mangham's testimony deposition. Instead, roughly six (6) months after the deposition took place – on March 6, 2009 – Dalton filed a motion to strike Mangham's trial testimony on grounds that it took place outside the set testimony period. On May 27, 2009, the Board denied Dalton's motion to strike as untimely. In reaching this decision, the Board noted that,

> [w]hen a testimony deposition is noticed for a date prior to the opening of the deposing party's testimony period, an adverse party that fails to promptly object to the scheduled deposition on the ground of untimeliness may be found to have waived this ground for objection, because the premature scheduling of a deposition is an error which can be corrected on seasonable objection.

Doc. 53, Order Resetting Trial Dates at 2 (May 27, 2009) (citing Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 707.03(a) (2d ed. 2004)).[2]

On November 13, 2009, Honda filed its trial brief on the merits. Although he sought and obtained an exten-

---

[2] While Dalton argues on appeal that the Board erred by denying his motion to strike Mangham's testimony, we find no error in the Board's analysis. As the Board correctly noted, an objection to a testimony deposition "must be raised promptly if the defect is one that can be obviated or removed, failing which it is deemed waived." TBMP § 707.03(a). Because Dalton filed his motion to strike roughly six months after the testimony deposition took place, the Board did not err in finding his motion untimely.

sion of time in which to respond, Dalton failed to file a responsive trial brief. In a decision dated August 6, 2010, the Board sustained Honda's opposition to registration of the DEALERDASHBOARD mark on grounds of mere descriptiveness. The Board found that: (1) Honda had standing to oppose Dalton's mark on behalf of its wholly-owned subsidiary; (2) DEALERDASHBOARD merely describes the services provided: "Internet-based information regarding sales, service, and inventory or parts to automobile dealerships"; (3) Honda failed to show that DEALERDASHBOARD is a generic term; (4) Dalton did not plead acquired distinctiveness, and there is no evidence to support such a claim. The Board also sustained Honda's evidentiary objections and noted that, even if the excluded documents were considered, the outcome would be the same.

Dalton timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

### STANDARD OF REVIEW

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). Substantial evidence is "'more than a mere scintilla' and 'such relevant evidence as a reasonable mind would accept as adequate' to support a conclusion." *Id.* (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

### DISCUSSION

Dalton's primary arguments on appeal fall into three categories. He argues that: (1) as a foreign corporation, Honda lacked standing to file an opposition on behalf of Honda America; (2) the Board erred when it found that the mark DEALERDASHBOARD was merely descriptive;

and (3) the Board erred when it excluded certain evidence from his testimony deposition.

In response, Honda submits that: (1) it has standing to file suit on behalf of American Honda because American Honda is a wholly-owned subsidiary; (2) the term DEALERDASHBOARD is merely descriptive of the identified services; and (3) the Board properly sustained Honda's objection to certain documents on grounds that they were not previously produced during discovery in accordance with the Board's order compelling discovery responses.

For the reasons set forth below, we find Honda's arguments well-taken.  Because we find no error in the Board's decision, we affirm.

## I.

Under Article III of the United States Constitution, a plaintiff must show a "case or controversy" between the parties to establish standing. *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999).  The "case" and "controversy" restrictions do not, however, apply to matters before administrative agencies.  *Id.*  Instead, for an agency such as the PTO, standing is conferred by statute. Here, standing is conferred by Section 13 of the Lanham Act, which provides, in pertinent part, that "[a]ny person who believes that he would be damaged by the registration of a mark . . . may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor."  15 U.S.C. § 1063(a).  The purpose of the standing requirement is "to prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more than an intermeddler."  *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028-29 (C.C.P.A. 1982).

In addition to meeting the broad requirements of § 13, an opposer must satisfy two judicially-created standing requirements. *Ritchie*, 170 F.3d at 1095. Specifically, an opposer has standing under § 13 if it can show: (1) a "real interest" in the proceeding; and (2) a "reasonable basis" for believing that it would suffer damage if the mark is registered. *Id.* Under the "real interest" requirement, an opposer must have "a legitimate personal interest in the opposition." *Id.* With respect to the second inquiry, the opposer's belief of damage "must have a reasonable basis in fact." *Id.* at 1098 (citation omitted).

A parent company has standing to file an opposition on behalf of its wholly-owned subsidiary because it can "reasonably believe that damage to the subsidiary will naturally lead to financial injury to itself." *See Universal Oil Prods. Co. v. Rexall Drug & Chem. Co.*, 463 F.2d 1122, 1124 (C.C.P.A. 1972) (finding that the parent corporation had a "real interest" in the proceeding and thus "standing to institute and maintain it"); *see also Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987) (citing *Universal Oil* for the proposition that "a parent corporation has standing to oppose on the basis of a mark owned and controlled by its subsidiary"); *Lipton*, 670 F.2d at 1029 (noting that the court has found standing to protect a subsidiary's mark). The Board similarly has found that a parent company of a wholly-owned subsidiary has a "sufficient commercial interest" to satisfy standing requirements. *See British-American Tobacco Co. v. Philip Morris Inc.*, 55 U.S.P.Q.2d 1585, 1591 (T.T.A.B. 2000) ("Because petitioners allege that TISA is BATCo's wholly owned subsidiary, we find that petitioners have alleged a sufficient commercial interest by BATCo in this proceeding for us to conclude that the petition contains an acceptable assertion of BATCo's standing."); *cf. Target Brands, Inc. v. Hughes*, 85 U.S.P.Q.2d 1676, 1679

(T.T.A.B. 2007) (finding that a wholly-owned subsidiary had standing to oppose registration on behalf of its parent corporation because the parties were in privity and any harm to the parent would harm the subsidiary).

Dalton argues that Honda lacked standing to oppose registration because it "is a foreign entity and applicant only made cease and desist demands on domestic organizations."[3]  Appellant Informal Brief at 6.  In response, Honda argues that it has a real interest and a reasonable basis for believing that it would be damaged if DEALERDASHBOARD was registered as a mark.  Specifically, Honda argues that its wholly-owned subsidiary American Honda: (1) uses the phrase "dealer dashboard" to identify key information on its dealer interactive network; and (2) received a cease and desist letter from Dalton.

We agree that Honda sufficiently demonstrated its standing to file an opposition on behalf of American

---

[3]  Dalton also argues that, as a foreign entity, Honda was shielded from discovery.  Informal Brief at 6.  To the extent Dalton is claiming that he sought discovery from Honda and was denied, there is no evidence supporting that argument in the record.  In any event, there are mechanisms for obtaining discovery from a foreign entity.  *See* 37 C.F.R. § 2.120(c)(1) ("The discovery deposition of a natural person residing in a foreign country who is . . . a person designated under Rule 30(b)(6) . . . shall, if taken in a foreign country, be taken in the manner prescribed by § 2.124 unless the Trademark Trial and Appeal Board, upon motion for good cause, orders or the parties stipulate, that the deposition be taken by oral examination."); *see also* 37 C.F.R. § 2.123(a)(2) ("A testimonial deposition taken in a foreign country shall be taken by deposition upon written questions as provided by § 2.124, unless the Board, upon motion for good cause, orders that the deposition be taken by oral examination, or the parties so stipulate.").

Honda. Although the Board did not specifically address the parent-subsidiary relationship, it applied the correct test and found that Honda demonstrated a real interest sufficient to give it standing to oppose Dalton's application. *See Board Decision*, 2010 TTAB LEXIS 358 at *8-10. Because American Honda is Honda's wholly-owned subsidiary, we find that Honda has alleged a "real interest" in the proceeding, including a reasonable belief that harm to American Honda would cause harm to Honda. *See Universal Oil*, 463 F.2d at 1124; *see also British-American Tobacco*, 55 U.S.P.Q.2d at 1591. Accordingly, the Board did not err in finding that Honda had standing to oppose Dalton's registration application.

## II.

Dalton next argues that the Board erred when it: (1) found that the mark DEALERDASHBOARD was merely descriptive; and (2) failed to consider third-party registrations that contain the term DEALER and/or DASHBOARD.[4] For the reasons discussed below, we find

---

[4] Dalton also argues that the Board erred when it concluded that he failed to show acquired distinctiveness. In response, Honda argues that, because Dalton did not raise acquired distinctiveness below, he waived his right to assert it on appeal. As the Board correctly noted, an applicant bears the burden of establishing acquired distinctiveness. *See Yamaha Int'l Corp v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 1576 (Fed. Cir. 1988). Although, as Honda points out, Dalton did not file a trial brief with the Board, the Board specifically addressed acquired distinctiveness and found that: (1) Dalton's application to register the mark DEALERDASHBOARD did not include a claim of acquired distinctiveness; (2) he failed to assert acquired distinctiveness in his answer to the Notice of Opposition; and (3) even if statements in his answer could be construed as a claim of acquired distinctiveness, he submitted no evidentiary support for such a claim. Re-

that the Board's descriptiveness determination was supported by substantial evidence.

### A. Merely Descriptive

A mark is merely descriptive "if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007) ("Bayer") (citing *In re Gyulay*, 820 F.2d 1216, 1217 (Fed. Cir. 1987)). A mark may be merely descriptive "even if it does not describe the 'full scope and extent' of the applicant's goods or services." *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173 (Fed. Cir. 2004) (citation omitted). It is well-established that "[d]escriptiveness of a mark is not considered in the abstract." *Bayer*, 488 F.3d at 963-64. Instead, the mark must be "considered in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *Id.* at 964. Stated differently, "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *In re Tower Tech Inc.*, 64 U.S.P.Q.2d 1314, 1316-17 (T.T.A.B. 2002).

Evidence that a term is merely descriptive "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *Bayer*, 488 F.3d at 964 (quoting *In re Bed & Breakfast Registry*, 791 F.2d 157, 160 (Fed. Cir. 1986)). A determination that a mark is merely descriptive is a factual finding that this court reviews for

gardless of whether Dalton can raise this issue on appeal, we find no error in the Board's analysis.

substantial evidence. *Bayer*, 488 F.3d at 964. For the reasons that follow, we conclude that the Board's factual findings were supported by substantial evidence.

First, the Board looked to the dictionary definitions in the record which defined the term "dealer" as "one engaged in buying and selling." *Board Decision*, 2010 TTAB LEXIS 358 at *11. The Board then considered documents in the record – including printed publications introduced as exhibits during Dalton's discovery deposition – to determine the meaning of the term "dashboard." Honda submitted evidence including dozens of examples of third parties who use the term "dealer dashboard" or "dashboard" to describe an Internet-based system that provides dealers with key performance indicators. As the Board noted, the record includes the following representative examples:

- *Denon Dealer Dashboard*: "The Dealer Dashboard is the easiest way for Denon dealers to get the latest information on Denon products, events, company information and more. As a Denon dealer, the Dashboard provides you with all kinds of product related items such as downloads, Images, sell sheets, and more." A168.

- *GoalLine Solutions*: "Dealer Dashboard Key Performance Indicators (KPIs) provide the dealer and service manager with visibility to the crucial numbers that drive the performance of the service [sic] Department. You have the ability to set target goals for the average labor dollars per repair order, one line work order percentages and average hours per repair order and see the results by year, month, week

or day.  By comparing it to the prior year's results, you have visibility to improvements in your department and more importantly areas of concern.  By using our secure data extraction portal we provide daily updating on Labor sales, Repair order counts and total hours sold for all sales categories."  A176.

- *Using Siebel Dealer Dashboards (Dealer)*: "Siebel Dealer provides dealer employees with dashboards that allow them to view the most important information that they need for their work on one screen."  A165.

Based on the third-party examples provided, and other evidence in the record, the Board found that the term "dashboard" "possesses a recognized meaning in the field of Internet-based business information tracking and presentation."  *Board Decision*, 2010 TTAB LEXIS 358 at *16.

The Board further found that the terms DEALER and DASHBOARD have descriptive significance when used in connection with the services identified in Dalton's application.  Specifically, the Board found that a DEALER DASHBOARD "is the graphical display of sales, service and other information relating to businesses engaged in buying and selling goods, particularly automobiles."  *Id.* The Board concluded that DEALERDASHBOARD "merely describes, without conjecture or speculation, a significant characteristic or feature of applicant's services, namely, that they provide Internet-based information regarding sales, service, and inventory or parts to automobile dealerships."  *Id.*

As Honda correctly argues, although the combination of two descriptive words may, in some instances, create a

distinctive mark, the combination of the two terms at issue here "does not diminish the common descriptive significance of Applicant's mark: A DEALER DASHBOARD is a dashboard for dealers." Appellee Brief at 20. *See In re Petroglyph Games, Inc.*, 91 U.S.P.Q.2d 1332, 1341 (T.T.A.B. 2009) (finding that, "because the combination of the terms does not result in a composite that alters the meaning of either of the elements, refusal on the ground of descriptiveness is appropriate"); *In re Nat'l Shooting Sports Foundation, Inc.*, 219 U.S.P.Q. 1018, 1020 (T.T.A.B. 1983) (internal citations omitted) ("Combinations of merely descriptive components have been found registrable if the juxtaposition of the words is inventive or evokes a unique commercial impression, or if the term has a bizarre or incongruous meaning as applied to the goods."). Dalton does not argue that the combination of terms alters their meaning, and, even if he did, there is no evidence in the record to support that argument.[5]

---

[5] Dalton argues that there was no evidence that DEALERDASHBOARD was merely descriptive when he filed his application for registration in 2003. Informal Brief at 5. In response, Honda argues that, by 2003, the terms DEALER and DASHBOARD were descriptive "in connection with the applied-for services." Appellee Brief at 19. According to Honda, the term "dashboard" was "commonly used to describe the presentation of managerial information and key financial indicators to businesses via the Internet well before 2003." *Id.* In support of this argument, Honda points to a printed publication in the record entitled *Information Dashboard Design: The Effective Visual Communication of Data*, which discusses companies' use of the term "dashboard" at least as early as 2003. Honda further argues that, to the extent Dalton claims to be the "first user" of DEALERDASHBOARD, there is no supporting evidence to that effect in the record. Even if there was, moreover, the "fact that an

We find that substantial evidence supports the Board's decision that DEALERDASHBOARD is merely descriptive. The dictionary definitions in the record, coupled with evidence of third parties that use the term "dealer dashboard" to describe services that are similar to those identified in Dalton's application, support the Board's descriptiveness finding. Accordingly, we find no error in the Board's decision.

As the Board recognized in its decision, Dalton's application to register the mark DEALERDASHBOARD did not include a claim of acquired distinctiveness under Section 2(f). Nor did Dalton specifically assert acquired distinctiveness in his answer to the Notice of Opposition. Instead, Dalton merely alleged that his "exclusive and continuous use" of the mark DEALERDASHBOARD began in October 1999. Doc. 8, Answer at 1 (Jan. 6, 2007). He also claimed that he "invested extensive time and resources" making DEALERDASHBOARD a "source identifier" that has become "alternatively distinctive and famous within the automotive industry." *Id.* at 5. The Board found that, even if Dalton's statements in his answer were construed as a claim of acquired distinctiveness, he submitted no evidentiary support for such a claim. We agree. Because Dalton failed to establish that DEALERDASHBOARD acquired secondary meaning or distinctiveness "in the minds of the public," we find no

---

applicant may be the first and only user of a merely descriptive or generic designation does not justify registration if the only significance conveyed by the term is merely descriptive." Trademark Manual of Examining Procedure § 1209.03(c) (7th ed. 2010). Because we find that the Board's descriptiveness determination was supported by substantial evidence, Dalton's unsupported arguments lack merit.

error in the Board's decision.  *See Dial-A-Mattress*, 240 F.3d at 1347.

## B.  Third-Party Registrations

Dalton next argues that the Board erred by not considering evidence of third-party registrations that include the term DEALER and/or DASHBOARD.  This argument is without merit.

It is well-established that third-party registrations "are not conclusive on the question of descriptiveness." *In re Scholastic Testing Serv., Inc.*, 196 U.S.P.Q. 517, 519 (T.T.A.B. 1977) (disregarding third-party registrations including the term "SCHOLASTIC" on grounds that they did not involve the services set forth in the application before the Board).  Even if there are third-party registrations using similar words, the Board "must decide each case on its own merits." *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001); *see also In re Rodale Inc.*, 80 U.S.P.Q.2d 1696, 1700 (T.T.A.B. 2006) ("Although consistency in examination is a goal of the Office, the decisions of previous Trademark Examining Attorneys are not binding on us, and we must decide each case based on the evidence presented in the record before us.").  Accordingly, a merely descriptive mark does not qualify for registration simply because other similar marks appear on the register.  *See Nett Designs*, 236 F.3d at 1342 (finding that prior registrations of marks including the term ULTIMATE "do not conclusively rebut the Board's finding that ULTIMATE is descriptive in the context of this mark").

On appeal, Dalton argues that, because the Board previously registered the mark "Banker Dashboard," it should "be consistent" and find that "DealerDashboard is a registerable mark."  Informal Brief at 6.  Although "Banker Dashboard" and "DealerDashboard" both contain

the term "Dashboard," this alone is insufficient to rebut the Board's decision that DEALERDASHBOARD is merely descriptive in the context of the identified services. *See Nett Designs*, 236 F.3d at 1342. Specifically, the Board found that the term DEALERDASHBOARD "is recognized and used by numerous third parties to describe Internet-based goods and services that are used to provide such information." *Board Decision*, 2010 TTAB LEXIS 358 at *16-17. Because the Board properly assessed the mark on its merits in the context of the services involved, we find no error in the Board's analysis.

## III.

Finally, turning to the Board's evidentiary rulings, Dalton argues that the Board erred when it sustained Honda's objections to certain documents he sought to introduce during his testimony deposition. In response, Honda argues that the Board properly struck the documents from the record because they were not produced in accordance with the Board's discovery order. We agree.

This court reviews evidentiary rulings for abuse of discretion. *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1390 (Fed. Cir. 2010) (citing *Chen v. Bouchard*, 347 F.3d 1299, 1307 (Fed. Cir. 2003)). We will reverse only if the Board's evidentiary ruling was: (1) "clearly unreasonable, arbitrary, or fanciful"; (2) "based on an erroneous conclusion[] of law"; (3) premised on "clearly erroneous findings of fact"; or (4) the record "contains no evidence on which the Board could rationally base its decision." *Id.* at 1390-91.

As noted, Honda served discovery requests on Dalton, and, when Dalton failed to respond, Honda filed a motion to compel production. In an order dated February 29, 2008, the Board ordered Dalton to provide, without objection, "full and proper responses" to the discovery requests

within thirty days. In its requests for production, Honda sought, among other things, "[a]ll exhibits that Applicant will introduce during any witness's deposition or testimony" and "[a]ll exhibits that Applicant will rely on, refer to, or introduce during the testimony period in this proceeding." A72. According to Honda, Dalton "produced only a limited set of materials" in response to these requests. During Dalton's testimony deposition, however, he sought to introduce numerous documents that were not included in his prior production. Honda objected to these documents on grounds that they were not produced during the discovery period, and, in its trial brief on the merits, Honda asked the Board to strike the documents from the record.

The Board sustained Honda's objections and excluded the documents at issue on grounds that "a party may not rely at trial upon documents that were not produced in response to written discovery requests." *Board Decision*, 2010 TTAB LEXIS 358 at *6. In reaching this decision, the Board cited prior instances where it excluded evidence on grounds that it had not been produced during discovery. *See Shoe Factory Supplies Co. v. Thermal Eng'g Co.*, 207 U.S.P.Q. 517, 519 n.1 (T.T.A.B. 1980) ("[O]pposer is correct in its contention that a party may not properly introduce a document in evidence in its behalf after having refused to make it available to an adverse party seeking discovery thereof."); *see also Nat'l Aeronautics & Space Admin. v. Bully Hill Vineyards, Inc.*, 3 U.S.P.Q.2d 1671, 1672 n.3 (T.T.A.B. 1987) (excluding exhibits that were requested during discovery "but which were not produced until opposer sought to introduce them during trial"). The Board noted, moreover, that, even if it had considered the documents, "the outcome would be the same." *Board Decision*, 2010 TTAB LEXIS 358 at *6, n.9.

We find no error in the Board's decision to exclude documents which were requested during discovery but were introduced for the first time during Dalton's testimony deposition. Because the Board specifically indicated that the excluded evidence had no bearing on the outcome of the proceeding, moreover, Dalton cannot show that consideration of that evidence would have led to a different result. Accordingly, we affirm the Board's evidentiary rulings.

CONCLUSION

For the foregoing reasons, and because we find that Dalton's remaining arguments are without merit, we affirm the Board's final decision.

***AFFIRMED***

COSTS

No costs.